## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMERICAN SECURITIES ASSOCIATION,

     Plaintiff,

v.                               Case No. 8:24-CV-1377-SDM-SPF

U.S. SECURITIES AND EXCHANGE COMMISSION,

     Defendant.

_____

### DEFENDANT SEC'S MOTION FOR SUMMARY JUDGMENT

Defendant U.S. Securities and Exchange Commission ("SEC") moves for summary judgment concerning the SEC's withholding of certain documents that were responsive to Plaintiff's Freedom of Information Act ("FOIA") requests at issue in this litigation – namely, spreadsheets used by Division of Enforcement attorneys to determine what penalties to recommend the SEC seek across multiple off-channel communications investigations. Summary judgment is appropriate here because there is no genuine dispute of material facts concerning Plaintiff's FOIA requests, and the SEC appropriately withheld the spreadsheets responsive to Plaintiff's FOIA requests pursuant to FOIA Exemption 5 (the attorney work-product doctrine and the deliberative process privilege).

Accordingly, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

## I.    STATEMENT OF MATERIAL FACTS

1.    On March 14, 2024, Plaintiff submitted three FOIA requests to the SEC seeking: (i) "all records relating to any credits or benefits that were received for 'self-reporting, remediating and cooperating' with the SEC," (ii) "all records (including, but not limited to, tables, calculations, schedules, matrices, standards, data, and guidelines) that were considered in connection with calculating, determining, proposing, or agreeing to any penalties, fines, or other sanctions associated with the SEC's recent recordkeeping sweep initiative," and (iii) "all records (including, but not limited to, emails and memoranda) discussing how any penalties, fines, or other sanctions associated with the SEC's recent recordkeeping sweep initiative were calculated, determined, proposed, or agreed to."  ECF No. 1, Compl. ¶¶ 49-51; Declaration of Mark Tallarico ("Tallarico Decl.") ¶ 5.

2.    The SEC assigned these FOIA requests tracking numbers 24-001813-FOIA, 24-001814-FOIA, and 24-001815-FOIA, respectively.  ECF No. 1, Compl. ¶ 52.

3.    In October 2024, the parties agreed to narrow the scope of the three FOIA requests to two categories of records: (1) "Any guidelines, matrixes, tables, and the like that the SEC used in determining the monetary fines in the investigations at issues," and (2) "Communications with opposing counsel regarding the investigations."  ECF No. 22; Tallarico Decl. ¶ 6.  The parties discussed and agreed

on the search parameters for locating responsive records, and Plaintiff is not challenging the search that was conducted. *Id.*

4.    On January 17, 2025, the SEC released to Plaintiff 1,086 pages responsive to the second category of Plaintiff's amended request ("Communications with opposing counsel regarding the investigations"). Tallarico Decl. ¶ 7. Certain information from the records was withheld under FOIA Exemptions 4, 6, and 7(C), 5 U.S.C. §§ 552(b)(4), (6), 7(C). *Id.* The SEC also tentatively withheld an additional 80 pages of records responsive to the second category, pursuant to FOIA Exemption 4, 5 U.S.C. § 552(b)(4), while it completed its process for addressing confidential treatment requests and records possibly containing confidential commercial or financial information as outlined in 17 C.F.R. ¶ 200.83 and Executive Order 12600, respectively. Tallarico Decl. ¶ 8. In productions dated February 11 and March 5, 2025, the SEC released 75 of these pages, withholding certain information under FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6), 7(C). *Id.* The SEC has completed processing the final five pages and will release them with some information redacted if the confidential treatment requesters do not file a court challenge regarding the SEC's decision not to release certain information by March 24, 2025. *Id.*

5.    Plaintiff is not challenging the withholding of information in documents released in response to the second category. *Id.*

3

6.    The SEC withheld the documents responsive to the first category ("Any guidelines, matrixes, tables, and the like that the SEC used in determining the monetary fines in the investigations at issues") in full, pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), which protects privileged information.  Tallarico Decl. ¶ 9. The SEC specifically determined that the attorney-work product doctrine and the deliberative process privilege protect the documents in full.  *Id.*

7.    This category of documents consists of 52 spreadsheets that identify entities that were being investigated in off-channel communications cases and reveal SEC Division of Enforcement ("Enforcement") attorneys' deliberations and thought processes about penalty amounts for each entity.  Tallarico Decl. ¶ 10.

8.    On February 24, 2025, the SEC provided to Plaintiff a preliminary *Vaughn* index describing the 52 spreadsheets that have been withheld and the SEC's basis for asserting the attorney work-product doctrine and the deliberative process privilege to protect the spreadsheets.  Tallarico Decl. ¶ 11.

9.    Plaintiff has informed the SEC that Plaintiff challenges the withholding of the spreadsheets identified in the preliminary *Vaughn* index.  Tallarico Decl. ¶ 12. The parties agree that the issue to be resolved through summary judgment is the SEC's withholding of the spreadsheets pursuant to FOIA Exemption 5 and relying on the attorney work-product doctrine and deliberative process privilege.  *Id.*

10.  The 52 spreadsheets all contain the same kind of information regarding SEC off-channel communications cases.  There are 52 iterations because

4

Enforcement attorneys have updated the spreadsheets as the SEC's investigations have progressed and because different Enforcement attorneys have created their own versions over time. Tallarico Decl., Ex. 1 ("Ex. 1"); Declaration of Thomas Smith ("Smith Decl.") ¶ 3.

11. The spreadsheets identify entities that were being investigated in off-channel communications cases at the time the spreadsheets were created or updated, in addition to, in certain instances, entities subject to SEC orders as cases settled. Ex. 1; Smith Decl. ¶ 3. Each spreadsheet contains columns or rows with information about the entities, and those columns or rows reflect certain factors SEC Enforcement attorneys were considering in determining what penalties to recommend the Commission accept in ongoing off-channel communications settlements. *Id.* The spreadsheets also reveal the attorneys' deliberations and thought processes about why penalty amounts in resolved cases were appropriately recommended. *Id.* The information about the resolved cases reflects how attorneys determined what amounts to recommend to the Commission, not the basis for the Commission's determination of the penalty. *Id.*

12. The spreadsheets were created solely for Enforcement attorneys' discussions in the context of ongoing off-channel communications cases and were not shared outside the agency. Smith Decl. ¶ 4.

13. The spreadsheets were prepared during Enforcement investigations into whether broker-dealers failed to retain off-channel communications in violation of

federal securities laws.  Smith Decl. ¶ 5.  As the SEC conducts its investigations with an eye toward litigation, the withheld spreadsheets were generated by Enforcement staff in anticipation of litigation.  *Id.*  The withheld information reflects the mental impressions and deliberations of SEC attorneys about then-ongoing off-channel communication cases.  *Id.*

14.  Release of the spreadsheets would cause harm because it would reveal SEC attorneys' mental processes in the off-channel communications cases, which could also affect future related matters.  Smith Decl. ¶ 6.  Disclosure of the information would deprive the SEC of its ability to withhold that information in future litigation and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future investigations and litigation.  *Id.*  SEC attorneys would also be reluctant to write down their thoughts and deliberations, which would hamper the agency's ability to carry out its responsibilities in a manner that is consistent with governing laws.  *Id.*

15.  Disclosure of the spreadsheets containing SEC Enforcement attorneys' deliberations regarding penalty determinations would also chill discussions and collaboration regarding decisions about whether to bring enforcement actions and what penalties to recommend that the Commission seek.  Smith Decl. ¶ 7.  If Enforcement attorneys knew that documents used in furtherance of decisions about enforcement actions could be released under the FOIA, they would be reluctant to record their views and collaborate on those documents during the deliberation

6

process.  *Id.*  Such a chilling would prevent robust collaboration among SEC staff in making key determinations during SEC investigations, which would adversely affect the decision-making process and the recommendations ultimately made to the Commission.  *Id.*  In particular, recommendations SEC Enforcement attorneys make to the Commission would not be vetted as fully as possible among groups of attorneys handling different cases and with different insights that could help to make penalty recommendations consistent and appropriate across the many cases SEC Enforcement attorneys recommend to the Commission.  *Id.*

16.  In addition, releasing the spreadsheets regarding the penalty recommendations in off-channel communications cases would cause public confusion regarding the weight given to different factors in making the penalty recommendations.  Smith Decl. ¶ 8.  Public confusion could also result because the deliberations reflected in the spreadsheets may not be reflective of the final penalty recommendation made to the Commission.  *Id.*

17.  Overall, disclosure would jeopardize the candid and comprehensive discussions and collaborative efforts that are essential for efficient and effective agency decision making regarding enforcement actions.  Smith Decl. ¶ 9.

18.  SEC staff conducted a line-by-line review of the spreadsheets to determine whether any portions of the records could be segregated for public disclosure.  Tallarico Decl. ¶ 14.  SEC staff have determined that no portion of the spreadsheets can be segregated from exempt information.  *Id.*

7

19.  SEC staff have reviewed the spreadsheets to determine if it is reasonably foreseeable that disclosure would harm an interest protected by Exemption 5. Tallarico Decl. ¶ 15.  The SEC has determined that no portion of the documents can be disclosed without causing harm to the SEC's interests protected by Exemption 5. *Id.*; Smith Decl. ¶ 10.

## II.   <u>ARGUMENT</u>

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Most FOIA cases are resolved at summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified.").

When considering a FOIA summary judgment motion, "reasonableness is the guiding principle." *Bory v. U.S. R.R. Ret. Bd.*, 933 F. Supp. 2d 1353, 1359 (M.D. Fla. 2013) (cleaned up).  "The only question for summary judgment is whether the agency . . . conducted a reasonable search, and whether its withholdings are justified." *Id.* (cleaned up).

"[A]ffidavits can be sufficient for summary judgment purposes if they provide as accurate a basis for decision as other methods." *Cappabianca v. Comm'r, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994), *citing Miscavige*, 2 F.3d at 368.  "Such agency affidavits must describe the justifications for nondisclosure with

8

reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and not be controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Found. for Gov't Accountability v. DOJ*, 688 F. Supp. 3d 1151, 1159–60 (M.D. Fla. 2023) (cleaned up). "An agency's declarations are entitled to a presumption of good faith." *Jimenez v. DHS*, 119 F.4th 892, 900 (11th Cir. 2024). The presumption can be rebutted with evidence of the agency's bad faith, but the evidence must exceed mere speculation. *Id.* "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Found. for Gov't Accountability*, 688 F. Supp. 3d at 1160 (cleaned up). "But the burden is on the agency to show that requested material falls within a FOIA exemption." *Id.* (cleaned up).

When addressing a motion for summary judgment, the Court "is to strike a balance between adequate review and respecting an agency's expertise and, accordingly, should not overstep the proper limits of the judicial role in FOIA review." *Dillon v. DOJ*, 444 F. Supp. 3d 67, 83 (D.D.C. 2020) (internal quotations omitted).

Like most FOIA cases, the only remaining dispute in this case is legal in nature, namely whether the SEC properly withheld the spreadsheets under FOIA Exemption 5's attorney work-product doctrine and deliberative process privilege. Summary judgment is warranted because the SEC "has fully discharged its obligations under the FOIA," even "after the underlying facts and the inferences to

be drawn from them are construed in the light most favorable to the FOIA requester." *Cause of Action Inst. v. DOJ*, 282 F. Supp. 3d 66, 72 (D.D.C. 2017) (internal quotations omitted).

### A. The SEC properly withheld records under FOIA Exemption 5.

#### 1. Agencies can withhold exempt information when responding to FOIA requests.

Though under the FOIA an agency must make certain government records available to the public upon proper request, the FOIA contemplates that some information may be kept from the public, as described in the FOIA's nine enumerated exemptions allowing the government to withhold documents or portions of documents. *See* 5 U.S.C. §§ 552(b)(1)-(9); *Cause of Action Inst. v. U.S. Dep't of Commerce*, 513 F. Supp. 3d 116, 123 (D.D.C. 2021) ("Congress recognized that the release of certain information may harm legitimate governmental or private interests") (internal quotations omitted). The agency bears the burden of justifying the withholding of information under an exemption. *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 185 (D.D.C. 2022).

Under the FOIA, an agency may withhold exempt information only if it "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption," "consider[s] whether partial disclosure of information is possible," and "take[s] reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A). "A record is not reasonably segregable if exempt and

10

nonexempt information are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Elec. Priv. Info. Ctr. v. FBI*, No. 1:17-CV-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018) (internal quotations omitted).  "Agencies enjoy a presumption that they complied with the obligation to disclose reasonably segregable material."  *Id.* (internal quotations omitted).

As described above, in support of an exemption claimed under the FOIA, an agency may rely on an agency affidavit describing the applicability of a FOIA exemption to information that the agency has withheld.  *See Cappabianca*, 847 F. Supp. at 1562.  In addition to an affidavit, the SEC may rely on a *Vaughn* index to justify its withholdings.  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008) ("in [the Eleventh] Circuit, an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, *or* through a combination of these methods."); *see also Ely v. FBI*, 781 F.2d 1487, 1492–93 (11th Cir. 1986) (explaining that the *Vaughn* Index is "to be preferred" over *in camera* review when considering assertions of privilege under the FOIA).

11

**2. Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine and the deliberative process privilege.**

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Thus, the threshold requirement under Exemption 5 is whether the records are "inter-agency or intra-agency" documents.  *Id.*  The threshold requirement is satisfied here because the withheld documents were created solely for Enforcement attorneys' discussions and were not shared outside the agency.  Smith Decl. ¶ 4; Ex. 1.

The next issue is whether the records are ones "that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5); *see also Cappabianca*, 847 F. Supp. at 1563 ("[Exemption 5] incorporates into FOIA all the normal civil discovery privileges the government enjoys under relevant statutes and case law.").  Courts have interpreted Exemption 5 to cover "the privileges available to Government agencies in civil litigation," which include the attorney work-product doctrine and the deliberative process privilege.  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021).

Plaintiff contests the SEC's withholding of 52 spreadsheets that were created by and for SEC Enforcement attorneys to discuss penalty recommendations in ongoing off-channel communications cases.  As explained in the *Vaughn* index, the 52 spreadsheets all contain the same kind of information:  they identify entities that

12

were being investigated in then-ongoing off-channel communications cases, also
including entities subject to SEC orders as cases settled.  Ex. 1.  Each spreadsheet
contains columns or rows with information about the entities, and those columns or
rows reflect certain factors SEC Enforcement attorneys were considering in
determining what penalties to recommend the Commission accept in ongoing off-
channel communications settlements.  *Id.*  The spreadsheets also reveal the attorneys'
deliberations and thought processes about why penalty amounts in resolved cases
were appropriately recommended.  *Id.*  The information about the resolved cases
reflects how attorneys determined what amounts to recommend to the Commission,
not the basis for the Commission's determination of the penalty.  *Id.*  As set forth
below, the spreadsheets are therefore appropriately covered by the attorney work-
product doctrine and the deliberative process privilege.

### 3.  The SEC properly withheld the spreadsheets under the attorney work-product doctrine.

"FOIA Exemption 5 incorporates the work-product doctrine and protects
against the disclosure of attorney work product."  *Jud. Watch, Inc. v. DOJ*, 432 F.3d
366, 369 (D.C. Cir. 2005).  The work-product doctrine "shields materials 'prepared
in anticipation of litigation or for trial'" by an attorney.  *Id.* (quoting Fed. R. Civ. P.
26(b)(3)).  The "testing question" for the work-product privilege is "whether, in light
of the nature of the document and the factual situation in the particular case, the
document can fairly be said to have been prepared or obtained because of the

13

prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal quotations omitted). Moreover, "as the Supreme Court has made clear, the doctrine should be interpreted broadly and held largely inviolate." *Jud. Watch,* 432 F.3d at 369, *citing Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

    In this case, the SEC's spreadsheets were prepared during Enforcement investigations into whether broker-dealers failed to retain off-channel communications in violation of federal securities laws. Ex. 1. As the SEC conducts its investigations with an eye toward litigation, the withheld spreadsheets were generated by Enforcement staff in anticipation of litigation. *Id.*; *see In re LTV Sec. Litig.*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) (finding that documents generated during the pendency of an SEC investigation were generated in anticipation of litigation and explaining that "[i]nvestigation by a federal agency presents more than a 'remote prospect' of future litigation and gives grounds for anticipating litigation sufficient for the work-product rule to apply"); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (holding that "where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product"); *see also In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004) (agreeing that "once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement").

14

As discussed above, the spreadsheets reflect the mental impressions and deliberations of SEC attorneys regarding penalty recommendations in connection with off-channel communication investigations that were ongoing at the time the spreadsheets were updated or created.  Ex. 1.  Specifically, they identify relevant factors that SEC attorneys were considering in ongoing cases to determine what penalties to recommend the Commission accept in off-channel communications settlements, factors that SEC attorneys considered in recommending previous penalties for comparison purposes, and notes regarding penalty recommendation approaches and suggestions.  *Id.*; *see Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012) (in analyzing whether work product privilege applied, court considered whether records were "assembling information, sifting through facts, preparing legal theories, or planning strategy," all factors weighing in favor of application of the privilege).

Courts have found similar information to be appropriately withheld pursuant to the attorney work-product doctrine.  *See, e.g., Gavin v. SEC*, No. 04-4522 PAMJSM, 2007 WL 2454156, at *9 (D. Minn. Aug. 23, 2007) (finding that documents were properly withheld as attorney work product pursuant to Exemption 5, where the documents were prepared by SEC attorneys "in the course of active investigations focusing on specific actions and possible securities law violations," and also contained "recommendations with respect to the status of an ongoing investigation"); *SEC v. Princeton Alternative Funding, LLC*, No. CV 21-12971

15

(RK)(JBD), 2025 WL 50377, at *5 (D.N.J. Jan. 8, 2025) (concluding that notes containing SEC attorneys' mental impressions, conclusions, and opinions during an investigation "reflect[ed] core opinion work product" and were appropriately protected by the work-product doctrine). Thus, the SEC has appropriately withheld information under the work-product doctrine component of Exemption 5.

"If a document is fully protected as work product, then segregability is not required." *Jud. Watch*, 432 F.3d at 371. Further, the release of the information protected by the attorney work-product doctrine would cause harm because it would reveal SEC attorneys' mental processes in the off-channel communications cases, which could also affect future related matters. Smith Decl. ¶ 6. Disclosure of the information would deprive the SEC of its ability to withhold that information in future litigation and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future investigations and litigation. *Id.*; *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 209 (D.D.C. 2010) ("privilege aims to protect the adversary trial process by providing attorneys a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories") (internal quotations omitted).

In addition, if such information were made available to opposing counsel, SEC attorneys would be reluctant to write down their thoughts and deliberations, which would hamper the agency's ability to carry out its responsibilities in a manner

16

that is consistent with governing laws.  Smith Decl. ¶ 6; *see In re Sealed Case*, 146 F.3d

at 884 ("Without a strong work-product privilege, lawyers would keep their thoughts

to themselves, avoid communicating with other lawyers, and hesitate to take

notes.").  As such, the SEC has met its foreseeable harm burden.  *See also Hickman*,

329 U.S. at 510–11 (stating that if attorney work product were disclosed,

"[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving

of legal advice and in the preparation of cases for trial. The effect on the legal

profession would be demoralizing. And the interests of the clients and the cause of

justice would be poorly served.").

### 4.  The SEC properly withheld information under the deliberative process privilege.

The deliberative process privilege applies to material that is both

"predecisional" and "deliberative."  *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l

R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004).  A record is

"predecisional" if it was "prepared in order to assist an agency decision-maker in

arriving at his decision and may include recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency."  *Id.*  And a record is

"deliberative" if "the disclosure of the materials would expose an agency's decision-

making process in such a way as to discourage candid discussion within the agency

and, thereby, undermine the agency's ability to perform its functions."  *Id.* at 1278.

17

The purpose of the deliberative process privilege is to "ensure that agencies are not forced to operate in a fish bowl" and to "allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Id.* at 1277-78. Therefore, "courts must focus on the effect of the material's release" and "conclude that predecisional materials are privileged to the extent that they reveal the mental processes of decisionmakers." *Id.* at 1278 (cleaned up).

Here, the withheld information is predecisional because it concerns intra-agency thoughts and recommendations regarding the penalties for entities that were subject to then-ongoing off-channel communication investigations prior to the final determination of the penalties that were recommended. Ex. 1. The withheld information is also deliberative because it reveals SEC Enforcement attorneys' decision-making process regarding penalty recommendations in off-channel communication cases, including the various factors Enforcement attorneys considered in assessing the appropriateness of possible penalty recommendations in ongoing cases and of penalty recommendations in previously resolved cases. *Id.* In similar cases where documents were created that culled relevant factors for consideration in decision-making and contained the opinions, recommendations, and considerations of agency staff, courts have found the documents to be protected by the deliberative process privilege. *See, e.g., Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 128, 138 (D.D.C. 2019) (finding that deliberative process privilege

18

protected factual information that was "inextricably intertwined" with deliberative discussions and was "selected, organized, and presented in such a way that requires 'the exercise of discretion and judgment calls'"); *Elec. Priv. Info. Ctr. v. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) ("The deliberative process privilege protects a compilation of factual material assembled through an exercise of judgment in extracting pertinent material . . . for the benefit of an official called upon to take discretionary action.") (internal quotations omitted); *W & T Offshore, Inc. v. U.S. Dep't of Com.*, No. CIV.A. 03-2285, 2004 WL 2115418, at *3 (E.D. La. Sept. 21, 2004) (concluding that deliberative process privilege applied to records "filled with opinions, recommendations, considerations, concerns and insights of agency employees" and that "[a]ny factual information contained in the withheld portions is organized or analyzed in such a way that it too may be classified as deliberative"); *see also Gavin*, 2007 WL 2454156, at *10 (upholding use of deliberative process privilege to protect documents created as part of investigation into possible violations of securities laws).

Because the withheld information is predecisional and deliberative, the SEC appropriately withheld it under the deliberative process privilege and Exemption 5.

SEC staff have reviewed the withheld spreadsheets at issue to determine whether any portions of those records could be segregated for public disclosure. Tallarico Decl. ¶ 14. SEC staff have determined that no portion of the spreadsheets can be segregated from exempt information. *Id.*

Further, the SEC has met the FOIA's foreseeable harm requirement with respect to the records withheld under the deliberative process privilege. SEC staff have reviewed the spreadsheets to determine if it is reasonably foreseeable that disclosure of the spreadsheets would harm an interest protected by Exemption 5. Tallarico Decl. ¶ 15. Disclosure of the spreadsheets containing SEC staff's deliberations regarding penalty determinations would chill discussions and collaboration regarding decisions about whether to recommend enforcement actions and what penalties to recommend that the Commission seek. Smith Decl. ¶ 7. If staff knew that documents used in furtherance of decisions about enforcement recommendations could be released under the FOIA, they would be reluctant to record their views in documents and collaborate on those documents during the deliberation process. *Id.* Such a chilling would prevent robust collaboration among SEC staff in making key determinations during SEC investigations, which would adversely affect the staff's decision-making process and the recommendations ultimately made to the Commission. *Id.* In particular, recommendations SEC Enforcement attorneys make to the Commission would not be vetted as fully as possible among groups of attorneys handling different cases and with different insights that could help to make penalty recommendations consistent and appropriate across the many cases SEC Enforcement attorneys recommend to the Commission. *Id.*

In addition, releasing the spreadsheets regarding the penalty recommendations in off-channel communications cases would cause public confusion regarding the weight given to different factors in making the penalty recommendations. *Id.* ¶ 8. Public confusion could also result because the deliberations reflected in the spreadsheets may not be reflective of the final penalty recommendations made to the Commission. *Id.*

Overall, disclosure would jeopardize the candid and comprehensive discussions and collaborative efforts that are essential for efficient and effective agency decision making regarding enforcement actions. *Id.* ¶ 9. Releasing this information would severely undermine "Exemption 5's goal" to "prevent injury to the quality of agency decisions." *Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-339 (CKK), 2007 WL 915211, at *12 (D.D.C. Mar. 26, 2007) (internal quotations omitted). Accordingly, the SEC cannot disclose any portion of the spreadsheets without causing harm to the interests protected by Exemption 5. Tallarico Decl. ¶ 15; Smith Decl. ¶ 10.

### III.    **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated:  March 24, 2025                          Respectfully submitted,

                                                /s/ *Esther Cheng*
                                                Esther Cheng
                                                Office of the General Counsel
                                                U.S. Securities and Exchange Commission
                                                D.C. Bar No. 1029082
                                                100 F Street, NE
                                                Washington, D.C. 20549
                                                Telephone: (202) 551-5092
                                                Fax: (202) 772-9263
                                                ChengEs@sec.gov

                                                *Counsel for Defendant*
                                                *U.S. Securities and Exchange Commission*