# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| AMERICAN SECURITIES ASSOCIATION, | |
| *Plaintiff*, | |
| v. | No. 8:24-cv-01377-SDM-SPF |
| U.S. SECURITIES AND EXCHANGE COMMISSION, | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | |

## PLAINTIFF'S COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

J. Michael Connolly (*pro hac vice*)
  *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff*
*American Securities Association*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION .......................................................................... 1

BACKGROUND AND STATEMENT OF MATERIAL FACTS ........................ 3

ARGUMENT ................................................................................ 8

    I.    The SEC forfeited its ability to withhold documents under Exemption 5. .... 8

    II.    The spreadsheets cannot be withheld under Exemption 5. ........................14

        A.    The spreadsheets cannot be withheld as attorney work product. .........14

        B.    The spreadsheets cannot be withheld under the deliberative process privilege. ..........................................................................................18

    III.    The SEC has not shown that the spreadsheets will cause foreseeable harm if disclosed. ......................................................................21

    IV.    At a minimum, the SEC must produce non-exempt material and, if necessary, the Court should conduct *in camera* review ...............................23

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abtew v. DHS*,
   47 F. Supp. 3d 98 (D.D.C. 2014)........................................................................24

*ACLU of Mass., Inc. v. ICE*,
   686 F. Supp. 3d 11 (D. Mass. 2023)..................................................................23

*ACLU of N. Cal. v. DOJ*,
   880 F.3d 473 (9th Cir. 2018) .....................................................................16, 24

*Aguirre v. NRC*,
   11 F.4th 719 (9th Cir. 2021) .............................................................................13

*AIDS Healthcare Found. v. FDA*,
   2014 WL 10983763 (C.D. Cal. Feb. 13) ...........................................................20

*Am. Oversight v. DHS*,
   691 F. Supp. 3d 109 (D.D.C. 2023) ..................................................................22

*Ass'n v. Exec. Off. for Immigr. Rev.*,
   830 F.3d 667 (D.C. Cir. 2016).........................................................................24

*Black v. N. Panola Sch. Dist.*,
   461 F.3d 584 (5th Cir. 2006) ............................................................................12

*BMW of N.A., Inc. v. Gore*,
   517 U.S. 559 (1996) ..........................................................................................3

*Bradfield v. Mid-Continent Cas. Co.*,
   2014 WL 1622794 (M.D. Fl. Apr. 21) ..............................................................15

*Carter v. U.S. Dep't of Com.*,
   830 F.2d 388 (D.C. Cir. 1987).........................................................................25

*Castaneda v. Garland*,
   562 F. Supp. 3d 545 (C.D. Cal. 2021) ..............................................................11

*Church of Scientology of Cal. v. IRS*,
   792 F.2d 153 (D.C. Cir. 1986).........................................................................13

*Coastal States Gas Corp. v. DOE*,
   617 F.2d 854 (D.C. Cir. 1980).........................................................................19

*Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................................23

*Cornucopian Inst. v. Agric. Mktg. Serv.*,
   312 F. Supp. 3d 85 (D.D.C. 2018)....................................................................24

*CREW v. DOJ*,
    746 F.3d 1082 (D.C. Cir. 2014) ......................................................... 6

*CREW v. DOJ*,
    955 F. Supp. 2d 4 (D.D.C. 2013) ......................................................14

*CREW v. FEC*,
    711 F.3d 180 (D.C. Cir. 2013) ...........................................4, 9, 11, 13

*Ctr. for Biological Diversity v. EPA*,
    279 F. Supp. 3d 121 (D.D.C. 2017) ............................................ 19, 20

*Ctr. for Investigative Reporting v. CBP*,
    436 F. Supp. 3d 90 (D.D.C. 2019) .............................................. 21, 22

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) .............................................................................12

*DOJ v. Tax Analysts*,
    492 U.S. 136 (1989) ......................................................................... 4

*Dubin v. Dep't of Treasury*,
    555 F. Supp. 408 (N.D. Ga. 1981) ......................................12, 13, 14

*Edwards v. Exec. Off. for U.S. Att'ys*,
    436 F. App'x 922 (11th Cir. 2011) ............................................ 17, 20

*Elec. Frontier Found. v. DOJ*,
    739 F.3d 1 (D.C. Cir. 2014) .............................................................18

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) .........................................................................11

*Ga, by Dep't of Cmty. Health v. Leavitt*,
    2006 WL 8432760 (N.D. Ga. May 18) ............................................20

*Greenlaw v. United States*,
    554 U.S. 237 (2008) .........................................................................11

*Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*,
    91 F.R.D. 84 (E.D.N.Y. 1981) ........................................................15

*Gula v. Meese*,
    699 F. Supp. 956 (D.D.C. 1988) ......................................................12

*Hall & Assocs. v. EPA*,
    2021 WL 1226668 (D.D.C. Mar. 31) ..............................................23

*Hickman v. Taylor*,
    329 U.S. 495 (1947) .........................................................................17

*Hidalgo v. FBI*,
    344 F.3d 1256 (D.C. Cir. 2003) ......................................................10

*In re Application of Republic of Ecuador*,
    280 F.R.D. 506 (N.D. Cal. 2012) ........................................................17

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
    2018 WL 4328253 (E.D. Pa. 2018)......................................................15

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ................................................................ 3

*Jordan v. DOJ*,
    591 F.2d 753 (D.C. Cir. 1978)............................................................12

*Jud. Watch, Inc. v. DHS*,
    895 F.3d 770 (D.C. Cir. 2018)............................................................11

*Jud. Watch, Inc. v. DOE*,
    888 F. Supp. 2d 189 (D.D.C. 2012) ....................................................10

*Jud. Watch, Inc. v. DOJ*,
    410 F. Supp. 3d 216 (D.D.C. 2019) ....................................................10

*Jud. Watch, Inc. v. DOJ*,
    2019 WL 4644029 (D.D.C. Sept. 24)..................................................21

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
    375 F. Supp. 3d 93 (D.D.C. 2019) ......................................................23

*Kimberlin v. DOJ*,
    139 F.3d 944 (D.C. Cir. 1998)............................................................24

*Miccosukee Tribe of Indians of Fla. v. United States*,
    516 F.3d 1235 (11th Cir. 2008)...........................................................19

*Michigan v. EPA*,
    576 U.S. 743 (2015) ..........................................................................11

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) ........................................................................... 4

*Nat'l Sec. Couns. v. CIA*,
    931 F. Supp. 2d 77 (D.D.C. 2013) ............................................... 10, 13

*News-Press v. DHS*,
    489 F.3d 1173 (11th Cir. 2007).......................................................4, 12

*Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*,
    125 F.R.D. 578 (N.D.N.Y. 1989) ........................................................18

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ..........................................................................16

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ..........................................................................19

*NPR, Inc. v. DHS*,
    2022 WL 4534730 (D.D.C. Sept. 28) ................................................................. 23

*Prop. of the People, Inc. v. OMB*,
    330 F. Supp. 3d 373 (D.D.C. 2018) .................................................................. 14

*Pub. Citizen, Inc. v. OMB*,
    598 F.3d 865 (D.C. Cir. 2010) ........................................................................ 18

*Pub. Emps. for Env't Resp. v. EPA*,
    288 F. Supp. 3d 15 (D.D.C. 2017) ................................................................... 18

*Raytheon Aircraft Co. v. USACE*,
    183 F. Supp. 2d 1280 (D. Kan. 2001) .............................................................. 16

*Redding v. ProSight Specialty Mgmt. Co.*,
    2014 WL 11412743 (D. Mont. July 2) ............................................................. 15

*Reporters LLC v. DOJ*,
    316 F. Supp. 3d 124 (D.D.C. 2018) ................................................................. 18

*Robbins Tire & Rubber Co. v. NLRB*,
    563 F.2d 724 (5th Cir. 1977) .......................................................................... 16

*Sciacca v. FBI*,
    23 F. Supp. 3d 17 (D.D.C. 2014) ..................................................................... 24

*SEC v. Collins & Aikman Corp.*,
    256 F.R.D. 403 (S.D.N.Y. 2009) ...................................................................... 16

*Shapiro v. DOJ*,
    969 F. Supp. 2d 18 (D.D.C. 2013) .......................................................... 14, 15, 16

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ........................................................................................ 8

*Stern v. O'Quinn*,
    253 F.R.D. 663 (S.D. Fla. 2008) ..................................................................... 17

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ........................................................................ 19

*Tax'n With Representation Fund v. IRS*,
    646 F.2d 666 (D.C. Cir. 1981) .................................................................... 18, 19

*Taylor v. Appleton*,
    30 F.3d 1365 (11th Cir. 1994) ........................................................................ 10

*United States v. Philip Morris USA, Inc.*,
    218 F.R.D. 312 (D.D.C. 2003) ......................................................................... 3

*United States v. Philip Morris, Inc.*,
    2004 WL 7372160 (D.D.C. Sept. 7) ................................................................. 19

*Waterman v. IRS,*
    61 F.4th 152 (D.C. Cir. 2023)..........................................................................20

*Wayland v. NLRB,*
    627 F. Supp. 1473 (M.D. Tenn. 1986) ............................................................16

*Woodford v. Ngo,*
    548 U.S. 81 (2006)............................................................................................10

*Young v. CIA,*
    972 F.2d 536 (4th Cir. 1992) ...........................................................................12

## STATUTES

5 U.S.C. §552..............................................................................................*passim*

## REGULATIONS

17 C.F.R. §200.80 ............................................................................................. 9

## RULES

Fed. R. Civ. P. 26..............................................................................................15

## OTHER AUTHORITIES

*Determination*, Merriam-Webster, perma.cc/2438-X2ZB .......................... 9

E. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*
    (6th ed. 2017) ...................................................................................................15

H.R. Rep. No. 89-1497 (1966) .........................................................................12

H.R. Rep. No. 114-391 (Jan. 7, 2016) ..............................................................21

S. Rep. No. 114-4 (Feb. 23, 2015) ...................................................................21

Steinway, SEC "Monetary Penalties Speak Very Loudly,"
    124 Yale L.J. 209, 224 (2014).......................................................................... 3

Stmt. of Comm'rs Peirce & Uyeda (May 22, 2024), bit.ly/3R7f534.....................1, 3

## INTRODUCTION

In recent years, the SEC has been roundly criticized for the aggressive, opaque, and wide-ranging penalties it has imposed on financial services companies. As two SEC Commissioners recently put it, the SEC has issued "disproportionately large" and "ever-steeper penalties" for "regulatory foot faults" that "bear little to no relation to real-world harm." Stmt. of Comm'rs Peirce & Uyeda (May 22, 2024), bit.ly/3R7f534. This has led to the "[r]easonable" "perception that the Commission's penalty regime is more a tool to generate numbers for year-end statistics and less a means to achieve outcomes that enhance market integrity and investor protection." *Id.*

In March 2024, the American Securities Association (a trade association of regional financial firms) filed multiple FOIA requests seeking to peel back the curtain and understand how the SEC determined these penalties. ASA asked the SEC to produce any tables, matrices, or guidelines it used for determining penalties it had recently imposed on financial services companies over their retention of "off channel" communications, like text messages. The SEC has such records, as it would later reveal, in the form of 52 spreadsheets, which contain information about those companies and the factors that the SEC used to determine their penalties.

The SEC should have promptly produced these spreadsheets. Yet it has fought the requests at every turn. The SEC's FOIA officer first rejected ASA's requests under Exemption 7(A), which exempts records used in ongoing enforcement proceedings. ASA appealed and pointed out the obvious: Exemption 7(A) couldn't apply because the proceedings had ended. Yet the SEC again denied the requests under Exemption

7(A). After ASA sued, the SEC unsurprisingly abandoned this argument and now asserts a *new* rationale, claiming that the spreadsheets are exempt under the work product and deliberative process privileges. The SEC's ever-changing excuses fail.

To start, the SEC has forfeited its ability to assert new exemptions. FOIA imposes extensive administrative obligations on both the agency and the requester. FOIA requires the agency to assert any applicable exemptions during the administrative proceedings and does not authorize the agency to make new arguments for withholding records once litigation commences. Because the SEC asserted only one exemption during the administrative process—an argument it has now abandoned—the SEC must produce the spreadsheets.

Yet ASA should prevail even if the SEC were allowed to make forfeited arguments. The spreadsheets cannot be withheld as work product because they were prepared in anticipation of a settlement, not litigation, and because they contain factual information that reveals no relevant mental impressions of an attorney. The spreadsheets also cannot be withheld under the deliberative process privilege because they discuss actions that the SEC has already taken, reflect the agency's formal policy for determining penalties, and contain purely factual material. The SEC also waived its right to assert these exemptions in April 2024 when it publicly revealed the information that it is now trying to withhold as secret. This publication also means that the SEC cannot show "foreseeable harm" if the spreadsheets are released.

The Court should grant summary judgment to ASA, deny the SEC's motion for summary judgment, and order the SEC to produce the spreadsheets in full.

## BACKGROUND AND STATEMENT OF MATERIAL FACTS

*The SEC's Settlements for Alleged Record-Keeping Violations*. The SEC has substantial and virtually unchecked power to penalize companies and individuals for violations of SEC regulations. *See Jarkesy v. SEC*, 34 F.4th 446, 449 (5th Cir. 2022). The agency has long been criticized for "select[ing] targets not because they are the worst violators, but for improper reasons such as agency or individual self-aggrandizement." Steinway, *SEC "Monetary Penalties Speak Very Loudly,"* 124 Yale L.J. 209, 224 (2014); *see also* Stmt. of Comm'rs Peirce & Uyeda, *supra* p.1.

In September 2021, the SEC launched a sweeping, suspicion-less investigation into whether certain broker-dealers were retaining "off channel" communications, such as text messages. Compl. ¶¶30-31; Ans. ¶¶30-31. Over the next two and half years, the SEC announced record-breaking fines, issuing more than $1.7 billion in penalties against 56 financial services companies. *See* Compl. ¶¶33-40; Answer ¶¶33-40. The penalties ranged from as high as $125 million to as low as $1.25 million. *See id.*

"The public has a vital interest in knowing what the law is." *United States v. Philip Morris USA, Inc.*, 218 F.R.D. 312, 319 (D.D.C. 2003) (cleaned up); *see also BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice … of the severity of the penalty that a State may impose."). Yet in its settlement orders, the SEC provided little to no reasoning for how penalties were calculated. *See* Compl. ¶¶33-39; Answer ¶¶33-39. To the regulated community, these enormous and wide-ranging fines appeared entirely arbitrary. Seeking answers, ASA turned to FOIA.

*The Freedom of Information Act*. Congress enacted FOIA "'to open agency action to the light of public scrutiny.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989). "Congress did so by requiring agencies to adhere to 'a general philosophy of full agency disclosure.'" *Id*. "'The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" *News-Press v. DHS*, 489 F.3d 1173, 1190 (11th Cir. 2007).

FOIA imposes extensive administrative obligations on both the agency and the requester. When an agency receives a FOIA request, it must promptly "gather and review the documents" and "determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents." *CREW v. FEC*, 711 F.3d 180, 186-88 (D.C. Cir. 2013) (citing 5 U.S.C. §552(a)(6)). FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citing 5 U.S.C. §552(b)). These exemptions are "'limited,'" must be "'narrowly construed,'" and "'do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'" *News-Press*, 489 F.3d at 1191. Even if an exemption applies, the agency may withhold the documents only if it "reasonably foresees that disclosure would harm an interest protected by [the] exemption" and "partial disclosure of information is [not] possible." 5 U.S.C. §552(a)(8)(A)(i)-(ii).

If an agency withholds documents, the requester must appeal to the "head of the agency" before filing suit. *Id*. §552(a)(6)(A). The agency must then "make a

determination with respect to [the] appeal." *Id.* If the agency upholds the determination, the requester may sue in federal district court seeking "review of that determination." *Id.* Federal district courts must order the agency to produce any records that were "improperly withheld from the complainant." *Id.* §552(a)(4)(B).

*ASA's FOIA Requests.* On March 14, 2024, ASA filed three FOIA requests with the SEC. ASA's first request sought any "tables," "calculations," "matrices," and "guidelines" that were used in "calculating, determining, proposing, or agreeing to any penalties, fines, or other sanctions associated with the SEC's recent recordkeeping sweep initiative." Ex. A at 3.[1] ASA's other requests sought similar information. Ex. B at 3 (requesting records "discussing how any penalties … were calculated"); Ex. C at 3 (requesting records "relating to any credits or benefits that were received for 'self-reporting, remediating and cooperating' with the SEC"). ASA's requests made clear that ASA was seeking only records for investigations that had ended. *See, e.g.*, Ex. A at 3 (seeking records from "the investigations resolved through [certain] settlements").

On April 3, 2024, the Deputy Director of the SEC's Division of Enforcement gave a public speech in response to heavy criticism of the penalties the SEC had imposed through these proceedings. *See* Ex. D. In his speech, the Deputy Director acknowledged complaints of the SEC's "wide range in penalties" and the belief that the SEC was "picking numbers at random." *Id.* at 3. To "disabuse" the public of this "perception," the Deputy Director revealed "the factors we consider when assessing

---

[1] All exhibit citations are to the exhibits in the accompanying Connolly Declaration.

what penalty to recommend in each action." *Id.* at 3-4. These factors include "the size of the firm," "the firm's revenues," the "scope of the violations," "how many individuals communicated off-channel," how many "off-channel communications [there] were," "efforts to comply with … recordkeeping obligations," "precedent" from prior "settled orders," whether the firm "self-reported," and a firm's "cooperation." *Id.* at 3.

Despite the SEC's purported commitment to transparency, a few weeks later, an SEC FOIA officer issued determinations denying ASA's FOIA requests. Exs. E at 1, F at 1, G at 1. The officer invoked only Exemption 7(A), *see id.*, which protects "law enforcement" records that, if released, "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. §552(b)(7)(A). The officer did not explain how disclosure would result in foreseeable harm and never addressed whether non-exempt material could be segregated. *See* Exs. E, F, G. The officer denied ASA's requests even though it never conducted a search for responsive documents. *See* Dkt. 18 at 1-2.

ASA promptly appealed to the full Commission, explaining that Exemption 7(A) could not possibly apply because the "proceedings referenced in the FOIA request[s] are public and have indisputably come to a close." Exs. H at 3, I at 3, J at 2; *see CREW v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) ("Exemption 7(A) … become[s] outdated when the proceeding at issue comes to a close."). ASA also noted that the FOIA officer failed to "explain how the disclosure would result in foreseeable harm" or "provid[e] [an] analysis of segregability." Exs. H at 3-4, I at 3-4, J at 3.

Despite the obvious inapplicability of Exemption 7(A), the SEC denied ASA's appeals, again relying on Exemption 7(A). Exs. K at 1-2, L at 1-2, M at 1-2. The SEC never explained how Exemption 7(A) applied to closed proceedings. *See id.* The SEC asserted that disclosing the records would cause foreseeable harm by "compromis[ing] ongoing enforcement proceedings" and that it didn't need to produce non-exempt information because "all the documents [ASA] requested are exempt." Exs. K at 3, L at 3, M at 3. Once again, the SEC withheld the requested documents without ever conducting a search. *See* Dkt. 18 at 1-2.

***Procedural History***. In June 2024, ASA filed suit. Dkt. 1. In August, the SEC abandoned its prior position, telling the Court that "[a]lthough [it] initially asserted FOIA Exemption 7(A)," it had now "determined that further processing of the FOIA requests [was] appropriate." Dkt. 18 at 1-2. The SEC said it had begun "a search for responsive records" but had no "estimated volume of potentially responsive records." *Id.* at 2. After further discussions, ASA agreed to narrow the scope of its requests to two categories of records: (1) any guidelines, matrixes, tables, and the like that the SEC used in determining the monetary fines in the investigations at issues; and (2) communications with opposing counsel regarding the investigations. Dkt. 22 at 3-4. The SEC subsequently produced documents responsive only to category two.

On March 10, 2025, the SEC moved for summary judgment. According to the SEC, it had withheld 52 spreadsheets that contain "information regarding SEC off-channel communications cases." Tallarico Decl., Ex. 1. These spreadsheets purportedly (1) "identify entities that were being investigated in off-channel communications"

or that were "subject to SEC orders as cases settled" and (2) contain "columns or rows with information about the entities." *Id.* In its declarations, the SEC does not identify the individuals who created the spreadsheets, the dates on which each spreadsheet was created, or the specific reasons why each spreadsheet was created. The SEC claims that it can withhold the spreadsheets under FOIA Exemption 5 (the deliberative process privilege and attorney work-product privilege). *Id.* The SEC no longer claims any reliance on Exemption 7(A). *Id.*

## ARGUMENT

The SEC must produce the spreadsheets in full. The SEC forfeited its ability to rely on Exemption 5 by not raising it during the administrative proceeding. Even if it hadn't forfeited the issue, the SEC's arguments would fail. The spreadsheets are not work product because they were not prepared in anticipation of litigation and do not reveal attorney mental impressions; and they are not covered by the deliberative process privilege because they discuss prior agency actions, reflect existing law, and contain purely factual information. The SEC also waived these privileges by publicly disclosing the information, and the SEC has failed to show that producing these spreadsheets would cause foreseeable harm. At a minimum, the SEC must segregate and disclose any non-exempt material in the spreadsheets.

## I. The SEC forfeited its ability to withhold documents under Exemption 5.

The "text, structure, and purpose" of FOIA make clear that the SEC forfeits exemptions that it does not raise during the administrative process. *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Start with the text. FOIA's judicial review provisions are

entirely backward looking: The Court must determine whether the agency proved its case at the administrative level. When an agency denies a FOIA request, the requester can seek "judicial *review* of *that determination*." 5 U.S.C. §552(a)(6)(A)(ii) (emphasis added); *see Determination*, Merriam-Webster, perma.cc/2438-X2ZB (a "determina-tion" is "the resolving of a question by argument or reasoning"). And if the agency's determination was erroneous—if its justifications for withholding documents were wrong—the Court must "order the production of [the] agency records." 5 U.S.C. §552(a)(4)(B). Not a single provision in FOIA allows agencies to raise new exemptions in litigation that they failed (at least twice) to make during the administrative process.

The structure of FOIA confirms that agencies cannot receive a free redo in the courts. FOIA imposes a rigorous process on requesters and agencies that makes little sense if agencies can assert new exemptions later. Under FOIA, agencies cannot wait until litigation to "gather and review the documents"; they must do so within 20 days of receiving the request. *CREW*, 711 F.3d at 188. Agencies cannot wait until litigation to provide their reasoning for withholding documents; they must promptly "determine and communicate the scope of the documents [they] intend[] to produce and withhold, and the reasons for withholding any documents." *Id.* And if the requester disagrees with the agency, FOIA imposes a *second* round of proceedings, requiring detailed ar-guments from the requestor and more reasoning and justifications from the agency. *Id.*; *see, e.g.*, 17 C.F.R. §200.80(f)(3), (6) (the requester must appeal to the SEC and explain why "the adverse determination was in error" and if the Commission affirms

the denial, the agency must "expla[in] ... the basis for the denial, identify the applicable FOIA exemptions asserted, and describe why the exemptions apply").

These extensive administrative proceedings are not for show; Congress expected agencies to take them seriously. *See Taylor v. Appleton*, 30 F.3d 1365, 1369 (11th Cir. 1994) (agencies "'invest[] time, resources, and expertise into the effort of responding'" to FOIA requests). Agency FOIA proceedings allow "'top managers of an agency to correct mistakes made at lower levels and thereby obviate[] unnecessary judicial review.'" *Jud. Watch, Inc. v. DOE*, 888 F. Supp. 2d 189, 192 (D.D.C. 2012). These proceedings promote judicial efficiency because "[i]n some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *see, e.g.*, *Jud. Watch, Inc. v. DOJ*, 410 F. Supp. 3d 216, 225 (D.D.C. 2019) (exhaustion under FOIA "could prevent the need for unnecessary judicial review"). And if litigation nevertheless ensues, the court will have an "ample record" that will help the court reach its decision. *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 100 (D.D.C. 2013); *see Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (FOIA administrative proceedings "affor[d] the parties and the courts the benefit of the agency's experience and expertise" (cleaned up)). All these benefits disappear if agencies have no incentive to take them seriously.

Recognizing agency forfeiture under FOIA also respects longstanding principles of administrative law and forfeiture. It is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency

invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015); *see, e.g.*, *Castaneda v. Garland*, 562 F. Supp. 3d 545, 560 (C.D. Cal. 2021) ("[T]he bond motion was rejected because ICE had not filed a Notice to Appeal; that is the basis upon which this Court will review the agency decision."). Courts also enforce forfeiture rules because they are "'part of the machinery by which courts narrow what remains to be decided.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.6 (2008). Courts "rely on the parties to frame the issues for decision," particularly where the "party" is "'the United States, the richest, most powerful, and best represented litigant.'" *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).

Excusing agency forfeiture would also undermine a key purpose of FOIA—to ensure "prompt responses" to record requests "without routine judicial involvement." *Jud. Watch, Inc. v. DHS*, 895 F.3d 770, 783 (D.C. Cir. 2018). If an agency has nothing at stake during the administrative process, it can deny FOIA requests on the flimsiest of grounds, knowing that it can always reevaluate the issue if the requestor sues. Indeed, that is exactly what happened here. The FOIA officer denied ASA's requests solely under Exemption 7(A), even though ASA showed unequivocally that Exemption 7(A) did not apply. *Supra* p.6. Indeed, it's now clear why the SEC pointed solely to Exemption 7(A) despite its obvious inapplicability: the SEC never "gather[ed] and review[ed]" the requested documents, *CREW*, 711 F.3d at 188; Dkt. 18 at 1-2, and pointing to Exemption 7(A) allowed it to withhold everything in one fell swoop, *see, e.g.*, Ex. K at 3 (asserting that no segregability analysis was needed because "all the documents [ASA] requested are exempt"). The Court should not tolerate this

gamesmanship. "Permitting agencies to invoke belated justification upsets 'the orderly functioning of the process of review,' forcing both litigants and courts to chase a moving target." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020) (cleaned up).

The SEC will likely point to a handful of cases allowing agencies to assert new exemptions during litigation. But none seriously grapples with the text, structure, and purpose of FOIA or with foundational principles of forfeiture. Most appear to trace back to a 1981 Northern District of Georgia decision. *See Dubin v. Dep't of Treasury*, 555 F. Supp. 408 (N.D. Ga. 1981); *see, e.g., Young v. CIA*, 972 F.2d 536, 538-39 (4th Cir. 1992) (adopting the reasoning of *Dubin*). But *Dubin*'s reasoning is unpersuasive.[2]

*Dubin* first found that "FOIA provides for *de novo* review in the courts, 5 U.S.C. §552(a)(4)(B), thus, minimizing the value of any record created before the agency." 555 F. Supp. at 412; *see also Young*, 972 F.2d at 538-39 ("[W]aiver is inappropriate because FOIA provides for *de novo* judicial review."). But *de novo* review never excuses forfeiture. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006) ("Even on de novo review, a party may not raise new legal arguments."). Congress did not mandate *de novo* review to give the agency a free redo. Quite the opposite. Congress required *de novo* review to ensure that courts would not defer to agencies' determinations. *News-Press*, 489 F.3d at 1190; *see also* H.R. Rep. No. 89-1497 (1966) ("The proceedings

---

[2] Other cases not relying on *Dubin* contain no analysis whatsoever. *See, e.g., Jordan v. DOJ*, 591 F.2d 753, 779 (D.C. Cir. 1978) (noting in *dicta* that "[a]n agency cannot prevail on an exemption that it has not raised either at the agency level or in the district court and that it has invoked for the first time in the appellate court"); *Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988) (following *Jordan* without explanation).

are to be *de novo* so that the court can consider the propriety of the withholding instead of being restricted to judicial sanctioning of agency discretion."); *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 167 (D.C. Cir. 1986) (Silberman, J., concurring) ("The *de novo* review section of FOIA requires courts to examine withheld documents to determine whether they are *in fact* covered by an exemption." (emphasis in original)).

*Dubin* also found forfeiture inappropriate because "a request is not actually litigated before an agency"; "[t]he agency grants the request or it does not, but no record is made that would be of any help to the reviewing court." *Dubin*, 555 F. Supp. at 412. But this reasoning is obviously wrong: FOIA mandates intra-agency appeals, requiring litigants to present their arguments and the agency to issue a reasoned decision. The record here, for example, contains six written decisions (two for each request) explaining the bases for the SEC's denial of ASA's FOIA requests. And it should have contained the records the SEC eventually turned over had the SEC "gather[ed] and review[ed]" the documents as FOIA requires. *CREW*, 711 F.3d at 188. An administrative record addressing the actual issues in this case plainly would have assisted the Court. *See Aguirre v. NRC*, 11 F.4th 719, 725 (9th Cir. 2021) (FOIA's administrative process "creates a useful record 'should judicial review become necessary'"); *see, e.g.*, *Nat'l Sec. Couns.*, 931 F. Supp. 2d at 99-100 (prohibiting plaintiff who didn't exhaust FOIA administrative remedies from suing because the agency was denied an "opportunity to develop an administrative record regarding the aspects of [its] responses that the plaintiffs are challenging").

Last, *Dubin* noted that "suit may be brought under the FOIA even before the agency determines whether to grant a request" if the agency fails to grant the request within FOIA's deadlines. 555 F. Supp. at 412. But this provision in FOIA simply allows a requester to sue without "exhaust[ing] his administrative remedies." 5 U.S.C. §552(a)(6)(C). It has nothing to do with agency forfeiture.

Simply put, nothing in FOIA suggests that Congress wanted to give agencies a free pass from complying with administrative obligations or excuse them from basic rules of forfeiture. Because the SEC did not rely on Exemption 5 during administrative proceedings, it cannot do so now.

## II.    The spreadsheets cannot be withheld under Exemption 5.

The SEC cannot withhold the requested spreadsheets under the work-product and deliberative process privileges, even if the SEC had not forfeited the argument.

### A.    The spreadsheets cannot be withheld as attorney work product.

Exemption 5 allow agencies to withhold documents protected by the work-product privilege in certain circumstances. But Exemption 5, like all exemptions, must be narrowly construed. *See, e.g.*, *Prop. of the People, Inc. v. OMB*, 330 F. Supp. 3d 373, 385 (D.D.C. 2018). If an agency "were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *CREW v. DOJ*, 955 F. Supp. 2d 4, 19 (D.D.C. 2013) (quotation marks omitted). The work-product rule thus "'does not extend to every written document generated by an attorney … [or] everything that a lawyer does.'" *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 29 (D.D.C. 2013).

14

Here, the spreadsheets cannot be withheld under the work-product privilege for four reasons. *First*, the spreadsheets were not prepared "'in anticipation of litigation or for trial.'" *Id.* at 30 (quoting Fed. R. Civ. P. 26(b)(3)). The spreadsheets were instead prepared in anticipation of a *settlement*. *See* SEC Mot. 5 (spreadsheets were used for "off-channel communications settlements"). They thus cannot qualify as work product. *See Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, 2018 WL 4328253, at *1 (E.D. Pa. 2018) ("drafts of the settlement agreement" not work product because they were not "prepared in anticipation of litigation or for trial"); *Bradfield v. Mid-Continent Cas. Co.*, 2014 WL 1622794, at *2 (M.D. Fl. Apr. 21) ("Plaintiffs have failed to offer any explanation as to how drafts of settlement and medication agreements were prepared 'in anticipation of litigation.'"); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 89-90 (E.D.N.Y. 1981) (records "prepared for settlement purposes" were not work product because they were "far more important to a resolution of [the] controversy than the uncertain prospect of litigation"); *see also* E. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 1132 (6th ed. 2017) ("[D]ocuments or other materials prepared looking toward, or in implementation of, a settlement often have been held not to be in anticipation of litigation."). Because these spreadsheets "clearly [were] prepared in anticipation of settlement," they are not protected work product. *Redding v. ProSight Specialty Mgmt. Co.*, 2014 WL 11412743, at *6 (D. Mont. July 2).

*Second*, the spreadsheets are not protected as work product because they do not "reveal or provide insights into the 'mental process of the attorney' in the analysis and

preparation of a client's case." *Shapiro*, 969 F. Supp. 2d at 32; *see Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724, 735 (5th Cir. 1977), *rev'd on other grounds*, 437 U.S. 214 (1978) ("Since the purpose of exemption 5 was to protect agency deliberative processes, purely factual material … must not fall within it, whether the agency urges upon us the executive or the work-product privilege."). These spreadsheets contain factual "information about the entities" that were "being investigated" or had already "settled," and the spreadsheets were purportedly referenced when determining penalties for "settlements." Tallarico Decl., Ex. 1. But a document compiling factual information, even if written by an attorney, is not protected if it "has no implications for the adversary process." *Shapiro*, 969 F. Supp. 2d at 32 (DOJ documents that "summarize briefs or cases and key issues identified in them" not work product); *see, e.g.*, *Raytheon Aircraft Co. v. USACE*, 183 F. Supp. 2d 1280, 1291 (D. Kan. 2001) ("[T]he dissemination of a list of public documents the two reports were based upon will not reveal anything the work-product doctrine seeks to keep sacrosanct."); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410-411 (S.D.N.Y. 2009) ("compilations of documents that support the factual allegations of a complaint" not work product). Because the spreadsheets are "objective reporting of facts," they are not protected as work product. *Wayland v. NLRB*, 627 F. Supp. 1473, 1476 (M.D. Tenn. 1986); *see, e.g.*, *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 485 (9th Cir. 2018) ("technical information about electronic surveillance techniques" not protected under Exemption 5 as work product).

*Third*, the spreadsheets are not protected as work product to the extent they were created by non-attorneys. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 497 (1947) (the work-product doctrine protects "files and records … of *an attorney*" (emphasis added)). Here, there are 52 spreadsheets that were "altered and updated" by "different individuals and offices." Tallarico Decl. Ex. 1. The SEC never identifies the authors and their job title for each spreadsheet. *See id.* If any of the authors or editors of the spreadsheets are non-attorneys, the spreadsheets must be produced. *See, e.g.*, *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 515 (N.D. Cal. 2012) ("[C]ommunications among non-attorney … employees … are not work product.").

*Last*, the spreadsheets are not privileged because the SEC has already voluntarily disclosed most of the information in the spreadsheets. A party "waives work-product protection by disclosing to third parties information otherwise protected by the work-product doctrine." *Stern v. O'Quinn*, 253 F.R.D. 663, 680-81 (S.D. Fla. 2008); *see Edwards v. Exec. Off. for U.S. Att'ys*, 436 F. App'x 922, 924 (11th Cir. 2011) ("If an agency voluntarily discloses information, it may not claim in a later proceeding that the previously released information is exempt from disclosure."). Here, the SEC, through the Deputy Director of the SEC's Division of Enforcement, has already publicly revealed "the factors we consider when assessing what penalty to recommend in each action." Ex. D at 3-4; *supra* p.5-6. Having disclosed these factors "in a manner which is … inconsistent with maintaining secrecy," the SEC cannot now invoke the

privilege to withhold the information from the public. *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y. 1989).

**B.    The spreadsheets cannot be withheld under the deliberative process privilege.**

The deliberative process privilege is "limited to documents that are predecisional and deliberative." *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014) (cleaned up). The spreadsheets are not protected by this privilege for several reasons.

*First*, the privilege does not apply because the spreadsheets concern "actions that an agency has already taken." *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981); *see* Tallarico Decl. Ex. 1 (spreadsheets contain information about "previously resolved … cases"). "The deliberative process privilege does not protect 'documents that merely state or explain agency decisions.'" *100Reporters LLC v. DOJ*, 316 F. Supp. 3d 124, 157 (D.D.C. 2018). Whether the SEC relied on these past decisions to guide future behavior is irrelevant. *See id.* ("These subsections were no doubt … helpful for DOJ as a point of comparison, but they summarize behaviors and agency decisions that were made previously."). Because the information concerns "choices that had already been made," it "cannot be shielded under Exemption 5." *Pub. Emps. for Env't Resp. v. EPA*, 288 F. Supp. 3d 15, 25 (D.D.C. 2017).

*Second*, the privilege does not apply because the spreadsheets "reflec[t] [the SEC's] formal or informal policy" for determining penalties. *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010); *see* Tallarico, Ex. 1 (the spreadsheets contain "columns or rows [that] reflect certain factors" used to determine penalties). Under FOIA,

18

agencies must disclose their "working law," which includes "the reasons [that] supply the basis for an agency policy actually adopted," because "the public is vitally concerned" with this information. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). Here, the SEC concedes that it uses the spreadsheets in an "attemp[t] to develop a body of coherent, consistent" penalties. *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); *see* Mot. 7 (the spreadsheets are used to make penalties "consistent and appropriate across [SEC] cases"). Because these spreadsheets were "routinely used by agency staff as guidance" in recommending penalties and "were retained and referred to as precedent," they are not protected by the deliberative process privilege. *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 869 (D.C. Cir. 1980); *see, e.g.*, *United States v. Philip Morris, Inc.*, 2004 WL 7372160, at *7 (D.D.C. Sept. 7) (document can be "'working law'" if "'agency staff itself is treating the document as precedential guidance'"); *Tax'n With Representation Fund*, 646 F.2d at 682 (memos used by IRS as "guidance 'as to the positions to take in negotiations' … with taxpayers" were not work product).

   *Third*, the spreadsheets are not protected because they contain "purely factual" information, *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 149-52 (D.D.C. 2017), and do not provide "'recommendations or express[ions] [of] opinions on legal or policy matters,'" *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008). According to the SEC, these spreadsheets contain "information about the entities" that were "being investigated" or that had already "settled" with the SEC. Tallarico Decl., Ex. 1. But Exemption 5 applies only to the "'deliberative portion[s] of a document'" and "'not to any purely factual, non-exempt information

19

the document contains.'" *Ctr. for Biological Diversity*, 279 F. Supp. 3d at 149. The SEC argues that this factual material is deliberative because it "reveals … the various factors" that the SEC was considering. SEC Mot. 18 (listing cases). But Exemption 5 does not protect a "'comprehensive collection of the essential facts.'" *Waterman v. IRS*, 61 F.4th 152, 160 (D.C. Cir. 2023). Because the spreadsheets contain information "with 'no commentary whatsoever,'" they are "not protected by Exemption 5." *Id.* at 159.

*Fourth*, the SEC has not properly invoked the privilege because neither declarant provides evidence that he has "the power to invoke the deliberative process privilege" or that "any federal regulation, or agency manual, document, or procedure establish[es] any guidelines pertinent to the exercise of [their] delegated authority to invoke the deliberative process privilege." *Ga, by Dep't of Cmty. Health v. Leavitt*, 2006 WL 8432760, at *3-5 (N.D. Ga. May 18) (rejecting reliance on the deliberative process privilege for failure to follow procedural requirements).

*Fifth*, even if the spreadsheets could be considered privileged, the SEC has waived its right to withhold them. The SEC "waive[s]" the deliberative process privilege "if it voluntarily shares information that would otherwise fall within its scope with non-governmental third-parties." *AIDS Healthcare Found. v. FDA*, 2014 WL 10983763, at *7 (C.D. Cal. Feb. 13); *Edwards*, 436 F. App'x at 924. As explained, the SEC has publicly disclosed its penalty factors, *supra* p.5-6, 17, the very information it now claims is secret and exempt, *see* Tallarico Decl., Ex. 1; Smith Decl. ¶5.

### III. The SEC has not shown that the spreadsheets will cause foreseeable harm if disclosed.

Even if the spreadsheets contain information protected by Exemption 5, the SEC still cannot withhold them. At the administrative stage, an agency "shall … withhold information … only if … [it] reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. §552(a)(8)(A)(i)(I). Under this provision, an agency that fails to show foreseeable harm must release a record "'even if it falls within a FOIA exemption.'" *Jud. Watch, Inc. v. DOJ*, 2019 WL 4644029, at *3 (D.D.C. Sept. 24). This foreseeable-harm requirement is a "'heightened standard'" that imposes an "'independent and meaningful burden'" on agencies. *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019).

Congress added the foreseeable-harm requirement in 2016 because it was "concerned that agencies were overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." *Id.* at 104 (cleaned up). "While some agencies had made an effort to comply with the letter of the law, very few had complied with the spirit of the law, and had instead taken advantage of FOIA's exemptions to withhold any information that might technically fit, resulting in a growing and troubling trend of invoking FOIA exemptions even though no harm would result from the disclosure." *Id.* (cleaned up). Importantly, "Congress was especially concerned about agencies' reliance on Exemption 5." *Id.*; *see* H.R. Rep. No. 114-391, at 10 (Jan. 7, 2016) ("Exemption five has been singled out as a particularly problematic exemption."); S. Rep. No. 114-4, at 3 (Feb. 23, 2015) (similar).

The SEC has not shown foreseeable harm. At the administrative stage, the SEC withheld the spreadsheets because it found it "reasonably foreseeable that disclosure of the withheld records would harm interests protected by Exemption 7(A)" by "compromis[ing] ongoing enforcement proceedings." Exs. K at 3, L at 3, M at 3. But the SEC has now abandoned that justification and instead raises a new argument about harm to agency collaboration. Smith Decl. ¶¶6-9. This argument is no more persuasive. The SEC has provided only boilerplate assertions of foreseeable harm that could *always* apply to *any* information purportedly protected by Exemption 5. *See* Smith Decl. ¶6 (attorneys would lose a "zone of privacy" and would be "reluctant to write down their thoughts and deliberations"); *id.* ¶7 (disclosure would "chill discussions and collaboration"); *id.* ¶8 (disclosure would cause "public confusion"). But "generic, across-the-board articulations of harm that largely repeat statements already found in the Vaughn Index," and "boilerplate" or "nebulous articulations of harm," are insufficient. *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106-07 (cleaned up). That's because the SEC's "generic rationale" just restates why Congress created Exemption 5 in the first place. *Am. Oversight v. DHS*, 691 F. Supp. 3d 109, 117 (D.D.C. 2023). Courts have thus rejected the same justifications raised by the SEC here. *See, e.g.*, *id.* (ordering agency to "release all documents withheld solely under Exemption 5" because the agency's "generalized assertions" that producing the documents would "'confuse the public'" and "'discourage the expression of candid opinions'" were insufficient for the agency to carry its burden of showing foreseeable harm). The SEC doesn't explain what specific harms will follow from disclosing these specific records.

The SEC's predictions of foreseeable harm are especially far-fetched given the SEC's decision to publicly disclose how it calculated the penalties. *See* Ex. D at 3-4 (revealing "the factors we consider when assessing what penalty to recommend in each action"). The SEC cannot "'articulate' a link between the withheld information" and specific harm to "the adversarial process" when the spreadsheets reveal information that is already public. *ACLU of Mass., Inc. v. ICE*, 686 F. Supp. 3d 11, 20-21 (D. Mass. 2023). Nor could disclosing spreadsheets containing factors and numbers—most of which, again, appear to be publicly known—ever "discourage frank and open dialogue as to the specific withholdings … in this case." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019); *see, e.g.*, *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370, 372 (D.C. Cir. 2021) (rejecting "perfunctory" claims that producing documents would "chill full and frank discussions"). Indeed, that the SEC has disclosed this information already suggests that it *benefits* from transparency. Because the SEC cannot carry its burden of showing foreseeable harm, the spreadsheets must be produced. *See, e.g.*, *NPR, Inc. v. DHS*, 2022 WL 4534730, at *10 (D.D.C. Sept. 28) (agency failed to show that disclosure "would cause reasonably foreseeable harm to an interest that Exemption 5 protects"); *Hall & Assocs. v. EPA*, 2021 WL 1226668, at *13 (D.D.C. Mar. 31) (same).

## IV.    At a minimum, the SEC must produce non-exempt material and, if necessary, the Court should conduct *in camera* review.

At a minimum, the SEC failed to segregate and produce non-exempt information. FOIA requires that "[a]ny reasonably segregable portion of a record shall be

provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. §552(b). Non-exempt portions of a document thus "'must be disclosed unless they are inextricably intertwined with exempt portions.'" *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998); *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016) (FOIA protects "'information, not documents.'"); *see, e.g.*, *ACLU of N. Cal.*, 880 F.3d at 489 (ordering the agency to produce "portions of the [document] contain[ing] technical information" that did not "address legal arguments" and were not "attorney work product"); *Abtew v. DHS*, 47 F. Supp. 3d 98, 114 (D.D.C. 2014) (paragraphs "recit[ing] and summariz[ing] … facts" were segregable from any material protected by the deliberative process privilege).

Here, the SEC has merely provided one conclusory paragraph that it reviewed the spreadsheets and determined that "no portion of the spreadsheets can be segregated from exempt information." Tallarico Decl. ¶14. This explanation is woefully insufficient. *See, e.g.*, *Sciacca v. FBI*, 23 F. Supp. 3d 17, 29 (D.D.C. 2014) (rejecting the agency's "conclusory statements" that "no reasonably segregable information exists"). As explained above, the spreadsheets should be produced in their entirety. But if the Court finds that any information was properly withheld, this information—which would necessarily be contained in cells on a spreadsheet—could easily be segregated.

Finally, the Court has all it needs to grant summary judgment to ASA without *in camera* review of the spreadsheets. *See, e.g.*, *Cornucopian Inst. v. Agric. Mktg. Serv.*, 312 F. Supp. 3d 85, 97 (D.D.C. 2018) ("Given the strong evidence that Exemption 4 does not apply …, there is no need for *in camera* review."). But if the Court has any lingering

doubts, it should review the spreadsheets *in camera*. FOIA provides that a district court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any exemptions." 5 U.S.C. §552(a)(4)(B). "'Congress intended to impose no mandates upon the trial court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge.'" *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 392 (D.C. Cir. 1987). "The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption." *Id.* Here, reviewing the spreadsheets *in camera* would be well within this Court's discretion, especially because there are only 52 "iterations" of the same spreadsheet that are at issue. Tallarico Decl., Ex. 1; *see Carter*, 830 F.2d at 393 ("[W]hen the requested documents 'are few in number and of short length,' *in camera* review may save time and money.").

## CONCLUSION

The Court should grant summary judgment to ASA, deny the SEC's motion, and order the SEC to produce the withheld spreadsheets.

Dated: April 14, 2025

Respectfully submitted,

 /s/ J. Michael Connolly

J. Michael Connolly (*pro hac vice*)
   *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff*
*American Securities Association*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2025, I electronically filed this document with the

Clerk of Court using the CM/ECF system, serving all counsel of record.


 */s/ J. Michael Connolly*

J. Michael Connolly

*Counsel for Plaintiff*
*American Securities Association*