UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN SECURITIES ASSOCIATION,

     Plaintiff,

v.                                                    Case No. 8:24-CV-1377-SDM-SPF

U.S. SECURITIES AND EXCHANGE COMMISSION,

     Defendant.

―――――――――――――――――――

**DEFENDANT SEC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

     Defendant U.S. Securities and Exchange Commission ("SEC") submits this opposition and reply in support of its motion for summary judgment concerning the SEC's withholdings under the Freedom of Information Act ("FOIA").

     In its Opposition, Plaintiff attempts to turn established precedent on its head to assert that the SEC has "forfeited" its right to rely on FOIA Exemption 5 to protect the spreadsheets. *See* ECF No. 32 ("Opp.") at 8–14. Plaintiff also mischaracterizes the spreadsheets' nature and contents to claim that the attorney work-product doctrine and the deliberative process privilege do not apply. *See* Opp. at 14–20. Plaintiff's arguments are belied by the record and relevant case law. Plaintiff also fails to assert any genuine issue of material fact.

     Because the SEC has appropriately withheld the spreadsheets under FOIA

Exemption 5, the Court should grant the SEC's motion for summary judgment and deny Plaintiff's cross-motion.

## I.    The SEC Has Not Forfeited Its Right To Withhold Documents Under Exemption 5

Plaintiff erroneously argues that because the SEC previously asserted Exemption 7(A) during the administrative proceedings, the SEC cannot now assert Exemption 5 in litigation to withhold the spreadsheets.  To the contrary, well-established FOIA law makes clear that the SEC did not waive this right.

Numerous courts have held that "an agency does not waive FOIA exemptions by not raising them during the administrative process."  *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992) (noting that it was "unremarkable" that the CIA "changed its position" as to which exemptions applied to the records since the administrative proceedings, and that the plaintiff "cite[d] no authority" and the court had "discovered none" supporting plaintiff's argument that the CIA's claimed exemptions were "suspect" because they had changed since the administrative proceedings); *see also Dubin v. Dep't of Treasury*, 555 F. Supp. 408, 412 (N.D. Ga. 1981), *aff'd*, 697 F.2d 1093 (11th Cir. 1983) ("conclud[ing] that no exemptions were waived by the defendant by not raising the exemption(s) during the 'administrative process'"); *LeForce & McCombs, P.C. v. HHS*, Case No. Civ-04-176-SH (E.D. Okla. Feb. 3, 2005) (in granting the agency's motion for summary judgment, stating, "Assuming *arguendo* the Agency had somehow failed to invoke the attorney-client

2

privilege in the administrative proceedings, the Court would nevertheless be free to consider the issue because its review of the Agency decision is *de novo*"); *Gula v. Meese*, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988) ("the defendant in a FOIA case may assert new exemptions at the federal district court level stage not previously asserted at the administrative level, even if the circumstances have not changed in the interim"). It is evident Plaintiff concedes this unanimous precedent, since Plaintiff only cites cases on this issue that reject its asserted position. *See* Opp. at 12.

As the Fourth Circuit reasoned in *Young v. CIA*, waiver of FOIA exemptions not asserted pre-litigation would be inappropriate for multiple reasons: because "FOIA provides for *de novo* judicial review, 5 U.S.C. § 552(a)(4)(B)"; because "agencies do not litigate FOIA requests and therefore do not create a record suitable for review"; and because "plaintiffs may bring suit even before the agency determines whether to grant a request if the agency has not acted within ten days of the request, 5 U.S.C. § 552(a)(6)(A)." 972 F.2d at 539, *citing Dubin*, 555 F. Supp. at 412, *aff'd*, 697 F.2d 1093 (11th Cir. 1983). Since no court has ever taken Plaintiff's position, Plaintiff seeks to invalidate an entire line of cases by arguing they were all wrongly reasoned and decided, including the Fourth Circuit's *Young v. CIA*, and the Eleventh Circuit-affirmed *Dubin v. Dep't of Treasury*. Plaintiff's arguments miss the mark.

First, Plaintiff challenges the courts' reasoning that by providing for *de novo* review in the courts, the FOIA allows courts to look beyond the administrative record. However, Plaintiff cites to cases discussing *de novo* review of district court

3

decisions at the *appellate* level, which would generally include a more fulsome development of the factual record and the legal issues than what occurs in FOIA administrative proceedings. *See* Opp. at 12, *citing Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006) (in stating that, "Even on *de novo* review, a party may not raise new legal arguments," the court was referring to d*e novo* review at the appellate level, where a party may not raise arguments that it "fail[ed] to raise in the district court absent extraordinary circumstances"); *News-Press v. DHS*, 489 F.3d 1173, 1190 (11th Cir. 2007) (not discussing *de novo* review at Plaintiff's pincite, "*News-Press*, 489 F.3d at 1190" (Opp. at 12); elsewhere holding that *de novo* review is the proper appellate standard of review for district court summary judgment decisions in FOIA cases). Plaintiff's other cites on this point, H.R. Rep. No. 89-1497 (1966) and *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 167 (D.C. Cir. 1986), refer to the uncontroversial point that FOIA court proceedings are *de novo* so that courts can properly determine whether withheld documents are appropriately covered by any exemption(s). As shown above, contrary to Plaintiff's argument that "*de novo* review never excuses forfeiture" (Opp. at 12), courts have uniformly held that FOIA exemptions not asserted pre-litigation are not waived.

Second, Plaintiff disputes the courts' reasoning that "a request is not actually litigated before an agency" and therefore does not result in an adequate record for judicial review. *See Young*, 972 F.2d at 539; *Dubin*, 555 F. Supp. at 412. Plaintiff calls this argument "obviously wrong" because arguments are presented during the

4

administrative proceeding.  *See* Opp. at 13.  However, the Fourth Circuit did not

state that there would be *no* record created, only that the record would not be

"suitable for review" in the way that a district court's record would be suitable for

review on appeal.  *Young*, 972 F.2d at 539.  Plaintiff seems to believe that where

courts held that there was no waiver of FOIA exemptions, the courts were unaware

of the basic FOIA statutory framework that may result in a record.  This belief defies

logic.  In addition, Plaintiff's cites here are unpersuasive, only stating the generic fact

that a FOIA requester's exhaustion of administrative remedies may create a useful

record for a court.  *See* Opp. at 13, *citing Aguirre v. NRC*, 11 F.4th 719, 725 (9th Cir.

2021); *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 99–100 (D.D.C. 2013).

Third, regarding the courts' reasoning that waiver would be inappropriate

because plaintiffs "may bring suit even before the agency determines whether to

grant a request if the agency has not acted within ten days of the request," *Young*, 972

F.2d at 539, Plaintiff argues this "has nothing to do with agency forfeiture" (Opp. at

14), but Plaintiff fails to grasp the courts' logic here:  a rule requiring agencies to

maintain the FOIA exemptions it asserted prior to district court proceedings makes

no sense when the statute provides that there may be no FOIA exemptions asserted

at that stage at all.

Finally, Plaintiff claims that the FOIA does not permit agencies to raise new

exemptions in litigation and vaguely cites to the "text, structure, and purpose" of

FOIA, the dictionary, and "longstanding principles of administrative law and

forfeiture." *See* Opp. at 8–14.  Plaintiff's main argument is that "[i]t is a 'foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action.'"  Opp. at 10–11.  However, none of the cases cited for this assertion was based on a *de novo* standard of review or suggests that agency action can never be upheld for reasons outside an administrative record when review is *de novo*.  *See Michigan v. EPA*, 576 U.S. 743 (2015) (reviewing EPA rule under the *Chevron* standard); *Castaneda v. Garland*, 562 F. Supp. 3d 545, 559–60 (C.D. Cal. 2021) (reviewing an action under the Administrative Procedure Act where the issue was whether the plaintiff was likely to succeed with her claim that the immigration court's decision "was arbitrary, capricious, an abuse of discretion, or not in accordance with law"); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 516 (2008) (reviewing punitive damages under federal maritime law under an "abuse-of-discretion standard"; specifically "stopp[ing] short" of restraining the appellate courts' discretion to deviate from the general rule "that a federal appellate court does not consider an issue not passed upon below"); *Greenlaw v. United States*, 554 U.S. 237 (2008) (reviewing whether the appellate court correctly applied the plain-error rule to order a criminal sentence enhancement *sua sponte*).  These cases have no bearing on review under the FOIA's *de novo* standard.

In relying on the statutory language, Plaintiff also claims that "[e]xcusing agency forfeiture would also undermine . . . 'prompt responses' to record requests

'without routine judicial involvement.'"  Opp. at 11.  However, Plaintiff does not explain how requiring agencies to identify every potentially-litigated exemption would encourage "prompt responses."  Conversely, common sense dictates the opposite:  If the FOIA Office were required to determine every exemption that might apply where, as here, an agency had a basis for finding that one exemption authorized the full withholding, it would needlessly delay the response and create a time-consuming hurdle that is neither contemplated nor required by the FOIA.[1]

Since the statutory language is consistent with allowing new claims in litigation, particularly in response to changing circumstances, and there is unanimous precedent holding that "an agency does not waive FOIA exemptions by not raising them during the administrative process," *Young,* 972 F.2d at 538, *stare decisis* is dispositive here.  *See Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 494 (1987) ("the doctrine of *stare decisis* is of fundamental importance to the rule of law").  The SEC did not waive its ability to protect privileged information by not relying on Exemption 5 during the administrative process.

---

[1] Plaintiff implies, without any evidence whatsoever, that the SEC's administrative proceedings were "for show" and not taken seriously.  *See* Opp. at 10.  In fact, the SEC had ongoing litigation involving federal securities laws violations similar to that in the resolved matters and consequently had a basis for asserting Exemption 7(A) to protect ongoing litigation.  *See* Connolly Decl., Exs. K (appeal decision for FOIA Request No. 24-01814-FOIA), L (appeal decision for FOIA Request No. 24-01815-FOIA), M (appeal decision for FOIA Request No. 24-01813-FOIA) (all further notifying Plaintiff that "[t]he SEC reserves the right to review the information to assert any other exemption when Exemption 7(A) is no longer applicable").

II.     **The SEC Properly Withheld Records Under FOIA Exemption 5**

A. **The spreadsheets are appropriately withheld as attorney work product**

Plaintiff fails to meaningfully contest the SEC's withholding of information pursuant to the attorney work-product doctrine.

First, Plaintiff argues that the spreadsheets are not covered by the work product doctrine because they were prepared "in anticipation of a settlement," not litigation. *See* Opp. at 15. As discussed in the SEC's opening brief, the spreadsheets at issue were prepared in anticipation of litigation, because they were prepared during investigations by the SEC's Division of Enforcement ("Enforcement") into whether broker-dealers failed to retain off-channel communications in violation of federal securities laws, which the SEC conducted with an eye toward litigation. ECF No. 31 ("Memo.") at 14; ECF No. 31-1 at 7 ("Ex. 1").

The fact that the spreadsheets involved deliberations regarding penalty recommendations for purposes of settling Enforcement cases does not preclude the records from constituting attorney work product. Initially, courts have held that documents regarding the calculation of penalties are covered by the attorney work-product doctrine. *See, e.g., Ecological Rts. Found. v. EPA*, 607 F. Supp. 3d 979, 995 (N.D. Cal. 2022), *aff'd,* 2023 WL 4342100 (9th Cir. July 5, 2023) (concluding there was "no genuine dispute" that internal discussions between agencies' attorneys on how to calculate and adjust penalties based on the merits of a given enforcement case

were properly withheld pursuant to the deliberative process, attorney-client, and attorney work-product privileges of Exemption 5).

In addition, courts have expressly rejected Plaintiff's argument that documents related to settlement "cannot qualify as work product." Opp. at 15; *see, e.g., Cities Serv. Co. v. FTC*, 627 F. Supp. 827, 832 (D.D.C. 1984), *aff'd*, 778 F.2d 889 (D.C. Cir. 1985) (rejecting plaintiff's argument that Exemption 5's work product privilege did not apply to documents because they "merely involve[d] discussion of settlement"; stating, "Certainly, any attorney's notes or working papers which relate to litigation decisions or to possible settlement discussions pertaining to foreseeable litigation are protected under the attorney work-product privilege"); *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146–47 (2d Cir. 1994) (concluding that work-product doctrine applied even after government counsel decided not to recommend enforcement litigation; stating, "the reports and recommended action with respect to the status of an investigation submitted before any final decision is made as to the course [of] an investigation qualify as documents prepared in anticipation of litigation"; further stating, "courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'").

The cases Plaintiff cites on this point are distinguishable, because they consist of records created solely for executing settlement – and, in one case, barred from ever being used in litigation – that cannot be described as "created with an eye toward

9

litigation." *See* Opp. at 15, *citing Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, 2018 WL 4328253, at *1 (E.D. Pa. 2018) (records at issue were "draft settlement agreements" that had been disclosed to an adversary); *Bradfield v. Mid-Continent Cas. Co.*, 2014 WL 1622794, at *2 (M.D. Fl. Apr. 21) (records at issue were "drafts of settlement and mediation agreements" and Plaintiff "failed to offer any explanation" as to how they were prepared in anticipation of litigation); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) (record at issue was a report prepared by a nonparty firm for settlement; in finding that the report was not attorney work product, the court noted that the "critical factor" was that an agreement barred the agency from ever using the report in litigation); *Redding v. ProSight Specialty Mgmt. Co., Inc.*, No. CV 12-98-H-CCL, 2014 WL 11412743, at *5 (D. Mont. July 2, 2014) (record at issue was an email exchange discussing specifically how to allocate the global settlement among multiple claimants).

Second, Plaintiff's argument that the spreadsheets are not attorney work product because they are "objective reporting of facts" mischaracterizes the spreadsheets. Opp. at 16. As the SEC previously described, the spreadsheets are not purely factual, but rather reflect the mental impressions and deliberations of SEC attorneys regarding the cases' penalty recommendations. *See* Memo. at 15; Ex. 1. Plaintiff's cites to cases dealing with records consisting of "purely factual material," summaries of briefs and cases, a "list of public documents," "compilations of documents that support the factual allegations of a complaint," and "technical

information" are therefore inapplicable to the case at hand. Opp. at 16. Further, the mere inclusion of facts is insufficient to deny work-product privilege protection where the facts were embedded in attorneys' mental impressions and deliberations, as is the case here. *See, e.g., Am. Immigr. Council v. DHS*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012) (factors weighing in favor of application of the privilege included whether records were "assembling information, sifting through facts, preparing legal theories, or planning strategy"); *see also* Smith Supp. Decl. ¶ 7 ("All portions of the spreadsheets reveal Enforcement attorneys' deliberations and considerations in assessing the appropriateness of penalty recommendations to the Commission").

Third, Plaintiff argues the spreadsheets "are not protected as work product to the extent they were created by non-attorneys." Opp. at 17. Plaintiff's argument misconstrues the law. *See id., citing In re Application of Republic of Ecuador*, 280 F.R.D. 506, 515 (N.D. Cal. 2012) (holding that communications among non-attorneys were not work product under the case-specific facts); *see also Jud. Watch, Inc. v. DOJ*, 806 F. App'x 5, 6–7 (D.C. Cir. 2020) ("In the FOIA context, [the D.C. Circuit] [has] long held that documents prepared by non-attorneys in anticipation of litigation may also be protected by the [attorney work-product] privilege"). However, in this case, the spreadsheets were, in fact, created by SEC Enforcement attorneys, so the point is moot. *See* Smith Supp. Decl. ¶ 4.

Lastly, Plaintiff argues that the spreadsheets are not protected by the attorney work-product doctrine because the information was disclosed by the then-Deputy

Director of Enforcement in remarks regarding factors the SEC focused on in

determining penalties.  Opp. at 17–18.  However, the spreadsheets at issue here

contain non-public information and deliberations that were not disclosed in those

remarks.  Smith Supp. Decl. ¶ 5.  For example, the spreadsheets reveal factors that

SEC Enforcement attorneys considered at different points in time and how the

deliberations regarding the factors may have evolved.  *Id.*  They also reveal more

detail regarding the factors and at times contain additional thoughts and

commentary on further context for the penalty recommendations.  *Id.*  In the FOIA

context, for information to be "officially acknowledged" such that disclosure

prevents the withholding, the information must: (1) "be as specific as the information

previously released," (2) "match the information previously disclosed," and (3)

"already have been made public through an official and documented disclosure."

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citation omitted).  Therefore,

waiver is inapplicable here.

Because the spreadsheets are properly covered by the attorney work-product

doctrine, they were appropriately withheld on this basis alone.

**B.  The spreadsheets are appropriately withheld under the deliberative process privilege**

Plaintiff also fails to meaningfully contest the SEC's withholding of

information pursuant to the deliberative process privilege.

First, Plaintiff argues that records relating to "actions that an agency has

12

already taken" are not covered by the deliberative process privilege without distinguishing between records explaining past actions and records addressing possible future actions.  Opp. at 18.  Plaintiff cites *Tax'n With Representation Fund v. IRS*, but omits the full context, which states, "Exemption 5 does not apply to *final agency actions* that constitute statements of policy or final opinions that have the force of law, or which explain actions that an agency has already taken."  646 F.2d 666, 677 (D.C. Cir. 1981) (emphasis added); *see also Pub. Emps. for Env't Resp. v. EPA*, 288 F. Supp. 3d 15, 25 (D.D.C. 2017) (finding the deliberative process privilege does not apply where information clarifies and explains a final agency action).  As the SEC has made clear, the spreadsheets contain "intra-agency thoughts and recommendations regarding the penalties prior to the final determination of the penalties that were recommended," and were not the basis for the Commission's final determination of the penalty.  Ex. 1.[2]

Second, Plaintiff argues that the deliberative process privilege does not apply because the spreadsheets "'reflec[t] [the SEC's] formal or informal policy' for determining penalties" (Opp. at 18).  This argument, similar to the one above,

---

[2] Neither is the information in the spreadsheets similar to the information in *100Reporters LLC v. DOJ*, 316 F. Supp. 3d 124, 157 (D.D.C. 2018), that merely summarized agency decisions, as Plaintiff suggests.  Opp. at 18.  Rather, the information is akin to the other materials found by the *100Reporters* court to be protected under the deliberative process privilege, which contained "recommendations, proposed courses of action, expressed opinions, and reflected feedback"; were generated before the agency's relevant decisions; and "played a key role in facilitating those decisions."  316 F. Supp. 3d at 156.

13

mischaracterizes the spreadsheets, which do not form the basis for the Commission's determination of penalties in off-channel communications cases. *See* Ex. 1. Notably, the spreadsheets do not present a set formula for calculating penalty recommendations or determinations; and in fact, no such formula exists. Smith Supp. Decl. ¶ 6. Thus, Plaintiff's cites discussing records that contain an agency's established policies or legal positions are inapposite. *See* Opp. at 18, *citing Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010) (records "reflect[ed] OMB's formal or informal policy on how it carries out its responsibilities," and "neither ma[de] recommendations for policy change nor reflect[ed] internal deliberations on the advisability of any particular course of action"); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975) (stating only that Exemption 5 does not protect "the reasons which did supply the basis for an agency policy *actually adopted*") (emphasis added); *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (records were "statements of an agency's legal position," rather than "documents produced in the process of formulating policy"); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 869 (D.C. Cir. 1980) (records were regional counsel opinions that "in practice represent[ed] interpretations of *established policy* on which the agency relie[d] in discharging its regulatory responsibilities") (emphasis added); *United States v. Philip Morris, Inc.*, No. 99-CV-2496 (GK), 2004 WL 7372160, at *7 (D.D.C. Sept. 7, 2004) (stating only that treatment as precedential guidance is one factor to consider in determining whether a document constitutes working law; otherwise defining

14

"working law" as "interpretations of *established policy* on which the agency relies in discharging its regulatory responsibilities") (emphasis added); *Tax'n With Representation Fund*, 646 F.2d at 682–83 (records were "relied upon as accurate representations of agency policy[,] not the ideas and theories which go into the making of the law, but the law itself") (cleaned up).

Third, Plaintiff again inaccurately describes the spreadsheets as "purely factual," a "collection" of "facts," and containing "no commentary whatsoever." Opp. at 19–20. As discussed above and in the SEC's opening papers, the spreadsheets significantly differ from this depiction. *See supra* 10–11; Ex. 1. In addition, the inclusion of "facts" does not void protection under the deliberative process privilege, as Plaintiff suggests. Where facts are assembled using discretion for purposes of recommending an agency decision, as they were here, courts have uniformly held that the deliberative process privilege applies. *See, e.g., Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (where agency staff prepares a "summary of factual material" for "use in making a complex decision, such a summary is part of the deliberative process," and FOIA Exemption 5 applies); *Elec. Priv. Info. Ctr. v. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) ("The deliberative process privilege protects a compilation of factual material assembled through an exercise of judgment in extracting pertinent material . . . for the benefit of an official called upon to take discretionary action.") (quotations omitted); Memo. at 18–19 (further citations).

Fourth, Plaintiff cites to an unpublished district court decision to assert that the SEC was required to provide "evidence" that the declarants had the "power to invoke the deliberative process privilege." Opp. at 20, *citing Georgia by Dep't of Cmty. Health v. Leavitt*, No. 1:05-CV-1687-BBM, 2006 WL 8432760, at *4 (N.D. Ga. May 18, 2006) (following what it deems the "Agency head" rule). However, none of the cases on which the district court relied for the purported "agency head" rule involved invocations of the privilege in the context of the FOIA. *See, e.g., Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 n.9 (5th Cir. 1981) (noting that the case was distinct from FOIA because it arose "in the ordinary common law discovery context"). Nothing in the FOIA requires additional "evidence" or special procedures to invoke the deliberative process privilege. *See* 5 U.S.C. § 552(b)(5); *see also Deuterium Corp. v. United States*, 4 Cl. Ct. 361, 363 n.2 (1984) ("The [deliberative process] privilege is codified at 5 U.S.C. § 552(b)(5), and in that context [under the FOIA] no affidavit from the agency head is necessary to invoke it."). Additionally, despite the fact that the application of the deliberative process is regularly litigated in FOIA cases, Plaintiff has not cited to a single published case in which there is any evidence of the "agency head" rule being applied in the FOIA context. *Cf. Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277–78 (11th Cir. 2004) (setting forth requirements for applying the deliberative process privilege and making no mention of special evidence or procedures required to invoke the privilege). Therefore, Plaintiff has not shown that the privilege was improperly invoked here.

16

Lastly, Plaintiff's argument that the SEC waived its privilege via disclosure fails for the reasons described above. *See supra* 11–12; Smith Supp. Decl. ¶ 5.

## III.    The SEC Has Sufficiently Demonstrated Foreseeable Harm

Plaintiff does not meaningfully contest that the SEC has met the FOIA's foreseeable harm requirement, mainly arguing only that the SEC's description of the foreseeable harm resulting from disclosure is insufficiently specific. Opp. at 21–23.

Plaintiff ignores the focused and concrete statements set forth in the Smith Declaration and instead cherry-picks phrases out of context. The Smith Declaration states, for example, that release of the spreadsheets would reveal "SEC attorneys' mental processes in the off-channel communications cases, which could . . . deprive the SEC of its ability to withhold that information in future litigation and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future investigations and litigation"; that chilling of robust discussion and collaboration regarding enforcement actions and penalty recommendations could occur whereby "recommendations SEC Enforcement attorneys make to the Commission would not be vetted as fully as possible among groups of attorneys handling different cases and with different insights that could help to make penalty recommendations consistent and appropriate across the many cases SEC Enforcement attorneys recommend to the Commission"; and that public confusion could result "regarding the weight given to different factors in making the penalty recommendations" and because "the

deliberations reflected in the spreadsheets may not be reflective of the final penalty recommendation made to the Commission."  ECF No. 31-2 ("Smith Decl.") ¶¶ 6–8; *see also Jimenez v. DHS*, 119 F.4th 892, 900 (11th Cir. 2024) ("An agency's declarations are entitled to a presumption of good faith.").

Plaintiff does not substantively address any of the harms explained by the SEC.  *See* Memo at 20–21.  Instead, it cites to cases involving "generic, across-the-board articulations of harm," "generic rationale," and "generalized assertions" that are distinguishable from the SEC's showing.  Opp. at 22.  Indeed, in those same cases, the courts' remarks about what would constitute a sufficient declaration are much more germane to the statements in the Smith Declaration.  *See Am. Oversight v. DHS*, 691 F. Supp. 3d 109, 117 (D.D.C. 2023) (noting that a sufficient declaration would "explain how disclosing the documents at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward"); *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019) (noting that a sufficient declaration would provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure").[3]

---

[3] Plaintiff further argues that no foreseeable harm could result given the alleged public disclosure of the penalties, but this is based on an erroneous premise, as discussed above. *See supra* 11–12.

## IV.    Segregability Is Not Required Here; And If It Is, The SEC Properly Found That There Is No Segregable Information

As an initial matter, because the spreadsheets at issue here constitute attorney work product, segregability is not necessary. *See Jud. Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005) ("If a document is fully protected as work product, then segregability is not required.").

But even if only the deliberative process privilege applied here, the SEC has sufficiently shown that there is no segregable information. *See* Smith Decl. ¶ 10; ECF No. 31-1 ("Tallarico Decl.") ¶¶ 14–15. Additionally, to erase any doubt, the SEC submits a further statement that "all portions of the spreadsheets would reveal Enforcement attorneys' deliberations and considerations in assessing the appropriateness of penalty recommendations to the Commission in off-channel communications cases." Smith Supp. Decl. ¶ 7. Even the column and row headings, for example, would reflect deliberations about what factors were (or were not) relevant or how certain entities subject to then-ongoing investigations were grouped and compared with other entities at certain points in time. *Id.* Therefore, to the extent there is any factual information in the spreadsheets, the information is inextricably intertwined with such deliberative material.[4]

---

[4] The case Plaintiff cites, *Sciacca v. FBI*, 23 F. Supp. 3d 17 (D.D.C. 2014), is distinguishable. In that case, the defendants "clearly failed to provide [the] Court with sufficient information for it to make the required specific findings of segregability" because, based on the information provided, the court could not "even ascertain which documents the FBI ha[d] entirely withheld, as opposed to those it ha[d] produced with redactions." *Id.* at 29. In

## V.    *In Camera* Review Is Not Necessary

As the Eleventh Circuit has explained, the *Vaughn* Index is "to be preferred" over *in camera* review when considering assertions of privilege under the FOIA so that cases do not "waste judicial resources" and because *in camera* review "tends seriously to erode the working of our adversarial system of dispute resolution." *Ely v. FBI*, 781 F.2d 1487, 1492–93 (11th Cir. 1986). Accordingly, *in camera* review is to be used only in "rare" cases. *Id.* at 1493. Here, where the SEC has clearly demonstrated the applicability of FOIA Exemption 5 to withhold the documents in their entirety, the SEC respectfully submits that *in camera* review is unnecessary.

## VI.    Conclusion

For the reasons stated above and in the SEC's opening brief, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment and deny Plaintiff's cross-motion.

---

contrast, the SEC's declarations here "contain[] enough information for the Court to assess . . . [the SEC's] conclusion that there is no reasonably segregable information in those documents." *Id.*; *see also Elec. Priv. Info. Ctr. v. FBI*, No. 1:17-CV-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018) ("Agencies enjoy a presumption that they complied with the obligation to disclose reasonably segregable material.") (quotations omitted).

Dated:  April 28, 2025                    Respectfully submitted,

                                          /s/  Esther Cheng
                                          Esther Cheng
                                          Office of the General Counsel
                                          U.S. Securities and Exchange Commission
                                          D.C. Bar No. 1029082
                                          100 F Street, NE
                                          Washington, D.C. 20549
                                          Telephone: (202) 551-5092
                                          Fax: (202) 772-9263
                                          ChengEs@sec.gov

                                          *Counsel for Defendant*
                                          *U.S. Securities and Exchange Commission*