# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| AMERICAN SECURITIES ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>*Defendant*. | No. 8:24-cv-01377-SDM-SPF<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## CROSS-MOTION FOR SUMMARY JUDGMENT

J. Michael Connolly (*pro hac vice*)
  *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff*
*American Securities Association*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

ARGUMENT .................................................................................................................. 1

    I.    The SEC forfeited its ability to withhold documents under Exemption 5. ...... 1

    II.   The spreadsheets cannot be withheld under Exemption 5. ............................ 4

        A.    The spreadsheets are not exempt under the work product privilege. ....... 4

        B.    The spreadsheets are not exempt under the deliberative
             process privilege. ................................................................................. 5

    III.  The SEC has not shown foreseeable harm from disclosing the spreadsheets... 7

CONCLUSION ............................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*100Reporters LLC v. DOJ*,
   316 F. Supp. 3d 124 (D.D.C. 2018) ........................................................................ 6

*Black v. N. Panola Sch. Dist.*,
   461 F.3d 584 (5th Cir. 2006) ................................................................................... 1

*BuzzFeed, Inc. v. DOJ*,
   419 F. Supp. 3d 69 (D.D.C. 2019) .......................................................................... 6

*Dubin v. Dep't of Treasury*,
   697 F.2d 1093 (1993) .............................................................................................. 3

*Ely v. FBI*,
   781 F.2d 1487 (11th Cir. 1986) ............................................................................... 7

*Farahi v. FBI*,
   2017 WL 11662716 (D.D.C. Jan. 23) ................................................................. 2, 3

*Georgia v. Leavitt*,
   2006 WL 8432760 (N.D. Ga. May 18) ................................................................... 6

*In re Grand Jury Subpoena*,
   282 F.3d 156 (2d Cir. 2002) ................................................................................... 4

*In re Piper Aircraft Corp.*,
   244 F.3d 1289 (11th Cir. 2001) ............................................................................... 1

*Knight v. C.I.R.*,
   552 U.S. 181 (2008) ............................................................................................... 2

*Maydak v. DOJ*,
   218 F.3d 760 (D.C. Cir. 2000) ................................................................................ 3

*Michigan v. EPA*,
   576 U.S. 743 (2015) ............................................................................................... 1

*Mingo Logan Coal Co. v. EPA*,
   829 F.3d 710 (D.C. Cir. 2016) ................................................................................ 2

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ............................................................................................ 4, 5

*NYT Co. v. DOJ*,
   939 F.3d 479 (2d. Cir. 2019) .................................................................................. 5

*Pub. Citizen, Inc. v. OMB*,
   598 F.3d 865 (D.C. Cir. 2010) ................................................................................ 5

*Robbins Tire & Rubber Co. v. NLRB*,
  563 F.2d 724 (5th Cir. 1977) .................................................................. 4

*S&S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*,
  2014 WL 12831947 (M.D. Fla. Sept. 11) ............................................. 1

*Shapiro v. DOJ*,
  153 F. Supp. 3d 253 (D.D.C. 2016) ...................................................... 2

*Shapiro v. DOJ*,
  969 F. Supp. 2d 18 (D.D.C. 2013) ........................................................ 4

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971) ............................................................. 6

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ............................................................... 5

*U.S. ex rel. Osheroff v. Humana, Inc.*,
  776 F.3d 805 (11th Cir. 2015) ............................................................... 2

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) ................................................................ 3

*United States v. Hansen*,
  599 U.S. 762 (2023) .............................................................................. 1

**Statutes**

5 U.S.C. §552 ............................................................................... 1, 2, 3, 6

**Other Authorities**

11th Cir. R. 36-2 ............................................................................................ 3

SEC, Press Release (Jan. 13, 2025), bit.ly/4k9ax8H ................................. 3

*The SEC's Recent Off-Channel Communications Settlements Create More Uncertainty*,
  Morgan Lewis (Oct. 1, 2024), bit.ly/4m2AnN6 .................................... 4

The SEC forfeited its ability to rely on new exemptions; the spreadsheets are not covered by Exemption 5; and the SEC cannot show any foreseeable harm.

## ARGUMENT

**I.   The SEC forfeited its ability to withhold documents under Exemption 5.**

On forfeiture, the SEC largely ignores the text of the statute. As explained, *see* ASA MSJ 8-10, FOIA looks backwards, giving the Court authority to "*review* [the agency's] determination." 5 U.S.C. §552(a)(6)(A)(ii) (emphasis added). If the agency erred, then the Court must "order the production of [the] agency records." *Id.* §552(a)(4)(B). Nothing in FOIA countermands the "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015).

The SEC points to §552(a)(4)(B), which requires courts to "determine the matter de novo." But *de novo* review means "without deference," *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001); it has never authorized litigants to "raise new legal arguments," *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006); *see, e.g.*, *S&S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 2014 WL 12831947, at *5 (M.D. Fla. Sept. 11) (*de novo* review doesn't authorize the Court to "consider a claim that was *never presented to the [agency] to begin with*"). Congress presumably adopted this "well-established legal meaning." *United States v. Hansen*, 599 U.S. 762, 774 (2023).

The SEC argues that *de novo* review should have a different meaning in FOIA because "court decisions at the *appellate* level … generally include a more fulsome development of the factual record and the legal issues than what occurs in FOIA

administrative proceedings." SEC Opp. 3-4. But forfeiture applies regardless of whether any factual development has occurred. *See, e.g.*, *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). And forfeiture rules are not limited to judicial proceedings. *See, e.g.*, *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 720 (D.C. Cir. 2016). The SEC's argument also wrongly implies that FOIA proceedings are casual and unserious. FOIA imposes a "rigorous process" that demands significant "'time, resources, and expertise'" from the requester and agency. ASA MSJ 9-10. Moreover, if *de novo* review allowed a court to "look beyond the administrative record" and ignore agency forfeiture, SEC Opp. 3-4, then it would also excuse *a requester's* forfeiture. But that isn't the law. *See, e.g.*, *Shapiro v. DOJ*, 153 F. Supp. 3d 253, 288 (D.D.C. 2016).

The SEC also points to §552(6)(C)(i), which states that a requester shall be "deemed to have exhausted his administrative remedies" if the agency "fails to comply with the applicable time limit provisions." But this provision simply authorizes a requester to bypass administrative proceedings and go straight to court; it has nothing to do with forfeiture. ASA MSJ 14; *see Knight v. C.I.R.*, 552 U.S. 181, 190-91 (2008) (statutory "'exception[s]'" should not be read "'expansive[ly]'" to "'eviscerate [a] legislative judgment'"). Indeed, forfeiture rules still apply in this scenario; the court would order the agency to conduct a search and any "'untimely assertion[s]'" of exemptions would be "'forfeited.'" *Farahi v. FBI*, 2017 WL 11662716, at *1-2 (D.D.C. Jan. 23).

The SEC argues that if agencies "were required to determine every exemption that might apply where, as here, an agency had a basis for finding that one exemption authorized the full withholding, it would needlessly delay the response." SEC Opp. 7.

2

But "permitting the government to raise its FOIA exemption claims one at a time" would frustrate the "efficient, prompt, and full disclosure of information." *Farahi*, 2017 WL 11662716, at *2; *Maydak v. DOJ*, 218 F.3d 760, 766 (D.C. Cir. 2000) (rejecting argument that when "the government invokes Exemption 7(A)" it need not assert other exemptions until "a court tells the government that Exemption 7(A) does not apply"). FOIA further gives agencies flexibility to deal with "'unusual circumstances,'" such as requests for a "voluminous amount of separate and distinct records." §552(a)(6)(B)(iii). The Court also has "discretion to consider a forfeited issue." *United States v. Campbell*, 26 F.4th 860, 873-74 (11th Cir. 2022). Importantly, however, the SEC *never argues* that it satisfies any equitable exception to forfeiture. *Id.*; *Maydak*, 218 F.3d at 767-68. Nor could it. The SEC had no legitimate basis for relying on Exemption 7(A), ASA MSJ 6-7, 11, and it barely argues otherwise.[1]

The SEC retreats to the "numerous courts" that have allowed agencies to raise new exemptions in litigation. SEC Opp. 2-3 (listing cases). But none are persuasive. ASA MSJ 12-14. *Young* parrots *Dubin*'s flawed reasoning; *LeForce* cites *Dubin* with no analysis at all; and *Gula* addresses the issue in a one-sentence footnote based on unreasoned dicta in a different case. These cases should not be followed.[2]

---

[1] The SEC cryptically argues that it "had a basis for asserting Exemption 7(a)" because it had "similar" "ongoing litigation." SEC Opp. 7 n.1. If the SEC is suggesting that its recordkeeping investigations ended by August 2024 (when the SEC recognized its error, *see* Dkt. 18 at 1-2), that isn't correct. The SEC announced settlements of similar investigations as late as January 13, 2025. *See* SEC, Press Release (Jan. 13, 2025), bit.ly/4k9ax8H. And the SEC's reliance on Exemption 7(A) was baseless even if "similar" litigation was ongoing. ASA MSJ 6-7, 11; *see, e.g.*, Connolly Decl. Ex. H at 2-3.

[2] The Eleventh Circuit's one-word, unpublished affirmance of *Dubin* is not binding or persuasive. 697 F.2d 1093 (1993); 11th Cir. R. 36-2. Nor is the SEC's puzzling plea to "stare decisis"

3

## II. The spreadsheets cannot be withheld under Exemption 5.

### A. The spreadsheets are not exempt under the work product privilege.

The spreadsheets are not protected work product if they were not prepared "'in anticipation of litigation or for trial.'" *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 30 (D.D.C. 2013). But the SEC concedes that the spreadsheets were made "for purposes of *settling* Enforcement cases." SEC Opp. 8 (emphasis added). This is a critical distinction. Work product prevents discovery of "the analysis and preparation of a client's case." *Shapiro*, 969 F. Supp. 2d at 32. But the spreadsheets reveal no such information. They were "tools used by Enforcement staff to determine what [penalty] amounts to recommend to the Commission," Smith Supp. Decl. ¶5, not to "anticipat[e] litigation or trial."

The SEC appears to argue that if it has an investigation open then any attorney document related to the investigation is *per se* in "anticipation of litigation or trial." But the work product privilege is "highly fact specific" and so such a "[b]road categorical" rule is unwarranted. *In re Grand Jury Subpoena*, 282 F.3d 156, 161 (2d Cir. 2002). Here, the SEC cannot show that these documents were *in fact* prepared "in anticipation of litigation or trial." Indeed, as of October 2024, "more than 100 entities ha[d] settled" with the SEC. *The SEC's Recent Off-Channel Communications Settlements Create More Uncertainty*, Morgan Lewis (Oct. 1, 2024), bit.ly/4m2AnN6. ASA is not aware of a single recordkeeping investigation that ever proceeded to "litigation" or "trial."

The SEC does not dispute that "purely factual" material must be produced, *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724, 735 (5th Cir. 1977), *rev'd on other grounds*,

---

appropriate, SEC Opp. 7, as this Court is not being asked to overrule any decision.

4

437 U.S. 214 (1978), and that the spreadsheets primarily contain "columns or rows with information about the [investigated] entities," Tallarico Decl., Ex. 1. Basic facts in a spreadsheet could never be "embedded" in protected material. SEC Opp. 10. Moreover, the SEC doesn't deny that the spreadsheets contain information that it already disclosed. SEC Opp. 11-12. Any privilege as to *that* information is waived. *See* ASA MSJ 17-18, 20. The SEC's only defense is that there is *additional* information in the spreadsheets that is not public. SEC Opp. 11-12. But that is no defense as to the already-public information. *See NYT Co. v. DOJ*, 939 F.3d 479, 494-98 (2d. Cir. 2019) (public statements waived privilege under Exemption 5 for "parts of the memoranda").

### B. The spreadsheets are not exempt under the deliberative process privilege.

The SEC's broad-brush claim that the spreadsheets are deliberative cannot withstand scrutiny. Start with the "factors" in the spreadsheets. Because the SEC used these factors to make penalties "consistent and appropriate across [its] many cases," SEC MSJ 17, they "reflec[t] [the SEC's] formal or informal policy" for determining penalties and thus are not "deliberative." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010); ASA MSJ 18-19. The SEC's only response is that the spreadsheets don't present a "set formula for calculating" penalties. SEC Opp. 13-14. But whether the factors are a mechanical mathematical equation is irrelevant. *See, e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (memoranda describing agency conclusions in past cases that are used to guide future decisions must be produced). The SEC unsurprisingly provides no case to supports its view. SEC Opp. 13-15.

Because the factors (the rows and columns) must be produced, the inputs (the

5

cells in between) must as well. It is only in "exceptional circumstances" that disclosure of "'purely factual material may so expose the deliberative process within an agency that it must be deemed exempted.'" *BuzzFeed, Inc. v. DOJ*, 419 F. Supp. 3d 69, 77 (D.D.C. 2019). Here, the factual inputs could not expose the deliberative process because ASA is *already entitled* to know the factors used, both because they are "working law" and because the SEC already publicized them in April 2024.

The SEC doesn't deny that the spreadsheets provide extensive details about *past* Commission actions. SEC Opp. 12-13. The SEC responds that the spreadsheets also "contain 'intra-agency thoughts and recommendations'" for *future* penalties.[3] SEC Opp. 13. But that does not excuse withholding descriptions of *past* conduct. ASA MSJ 18. The SEC's past penalties "were no doubt … helpful for [the SEC] as a point of comparison, but they summarize … agency decisions that were made previously and that are unrelated to" other entities. *100Reporters LLC v. DOJ*, 316 F. Supp. 3d 124, 157 (D.D.C. 2018). Explanations of the SEC's prior decisions are not privileged. *Id.*[4]

Last, as explained above, the SEC has waived its right to withhold the information that was already publicly revealed. *Supra* p.5; ASA MSJ 5-6, 17-18, 20.

---

[3] The *Vaughn* Index actually says that the spreadsheets "concer[n]"—not "contain"—thoughts and recommendations. Tallarico Decl. Ex. 1. It appears that the spreadsheets "contain" very little "thoughts and recommendations." Smith Supp. Decl. ¶5 ("at times"). The spreadsheets appear to primarily "contai[n] columns or rows with information about the entities." Tallarico Decl. Ex. 1.

[4] The SEC still fails to provide evidence that its two declarants have "the power to invoke the deliberative process privilege." *Georgia v. Leavitt*, 2006 WL 8432760, at *3-5 (N.D. Ga. May 18). Nor does the SEC deny that such a declaration is normally required in civil litigation. SEC Opp. 16. That should be dispositive. The privilege can be invoked only when it would not normally "be available … in litigation with the agency." 5 U.S.C. §552(b)(5); *cf. Soucie v. David*, 448 F.2d 1067, 1071 & n.8 (D.C. Cir. 1971) (not considering "executive privilege" that was not "expressly invoked" by agency head).

6

### III. The SEC has not shown foreseeable harm from disclosing the spreadsheets.

The SEC's attempt to show foreseeable harm is doomed by a simple fact: it has already publicized much of this information. ASA MSJ 5-6, 23. The SEC doesn't deny this but insists that the spreadsheets contain "much more detail" than previously disclosed. Smith Supp. Decl. ¶5. That argument misses the point. The SEC's disclosure proves that releasing this type of information *isn't* harmful to any SEC interest. If it were, the SEC never would have disclosed the factors in the first place.

The SEC also identifies no particularized harm that would occur if the public learned how penalties were calculated (*e.g.*, that regulated entities would change their conduct or refuse to settle if they knew the truth). The SEC points only to a generalized harm for future and unrelated investigations—that SEC attorneys will lose a "'zone of privacy'" and this would chill "'robust discussion'" such that future recommendations would not be "'vetted as fully.'" SEC Opp. 17. These vague assertions fall short. ASA MSJ 22. They are also highly questionable. The SEC admits it wants transparency into how penalties are calculated, *see* Connolly Ex. D, and that it strives to "make penalty recommendations consistent and appropriate across [its] many cases," Smith Decl. ¶7. Further public disclosure should not deter the SEC from achieving its goals.[5]

### CONCLUSION

The Court should grant ASA summary judgment and deny the SEC's motion.

---

[5] As explained, the spreadsheets should be produced in their entirety. ASA MSJ 8-23. If the Court disagrees, any information that was properly withheld could easily be segregated. ASA MSJ 23-25. And while unnecessary for ASA to prevail, *in camera* review would be well within the Court's discretion here. *Id.*; *Ely v. FBI*, 781 F.2d 1487, 1493 (11th Cir. 1986) (*in camera* review is proper when the documents are "'relatively brief, few in number, and where there are few claimed exemptions'").

Dated: May 12, 2025                    Respectfully submitted,

    /s/ J. Michael Connolly

J. Michael Connolly (*pro hac vice*)
  *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff*
*American Securities Association*

8

## CERTIFICATE OF SERVICE

I certify that on May 12, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system, serving all counsel of record.

                                        */s/ J. Michael Connolly*

                                        J. Michael Connolly

                                        *Counsel for Plaintiff*
                                        *American Securities Association*