IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| AMERICAN SECURITIES ASSOCIATION, *Plaintiff*, v. U.S. SECURITIES AND EXCHANGE COMMISSION, *Defendant*. | No. 8:24-cv-01377-SDM-SPF<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

J. Michael Connolly (*pro hac vice*)
  *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff*
*American Securities Association*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii
TABLE OF AUTHORITIES ......................................................................................... iii
INTRODUCTION .......................................................................................................... 1
ARGUMENT .................................................................................................................. 3
    I.    The R&R ignored ASA's textual arguments and misapplied the law of forfeiture ................................................................................................. 3
    II.   The R&R misapplied the work product doctrine and deliberative process privilege ................................................................................................... 6
        A.    The SEC spreadsheets are not exempt under the work product doctrine ................................................................................................. 6
        B.    The SEC spreadsheets are not exempt under the deliberative process privilege ................................................................................................. 8
   III.  The R&R failed to properly apply the foreseeable harm standard ................ 9
   IV.  The R&R failed to properly segregate and produce non-exempt material. ..11
CONCLUSION .............................................................................................................13
CERTIFICATE OF SERVICE .....................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*100Reporters LLC v. DOJ*,
  316 F. Supp. 3d 124 (D.D.C. 2018) .................................................................. 9

*ACLU of Mass., Inc. v. ICE*,
  686 F. Supp. 3d 11 (D. Mass. 2023) ................................................................12

*ACLU of N. Cal. v. DOJ*,
  880 F.3d 473 (9th Cir. 2018) ...................................................................... 8, 12

*Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*,
  830 F.3d 667 (D.C. Cir. 2016) ......................................................................... 8

*Ctr. for Investigative Reporting v. CBP*,
  436 F. Supp. 3d 90 (D.D.C. 2019) ............................................................. 9, 10

*Dubin v. Dep't of the Treasury*,
  555 F Supp. 408 (N.D. Ga. 1981) ................................................................... 4

*EFF v. DOJ*,
  517 F. Supp. 2d 111 (D.D.C. 2007) ...............................................................10

*Farahi v. FBI*,
  2017 WL 11662716 (D.D.C. Jan. 23) ............................................................. 5

*Frank LLP v. CFPB*,
  288 F. Supp. 3d 46 (D.D.C. 2017) .................................................................. 6

*In re Grand Jury Subpoena*,
  282 F.3d 156 (2d Cir. 2002) ........................................................................... 6

*Jimenez v. DHS*,
  119 F.4th 892 (11th Cir. 2024) .....................................................................10

*Jud. Watch, Inc. v. DOJ*,
  2019 WL 4644029 (D.D.C. Sept. 24) ............................................................. 9

*Jurewicz v. USDA*,
  891 F. Supp. 2d 147 (D.D.C. 2012) ................................................................ 4

*Project for Priv. & Surveillance Accountability, Inc. v. Off. of the Dir. of Nat'l Intel.*,
  2025 WL 2506561 (D.D.C. Sept. 2) ..............................................................11

*Pub. Citizen, Inc. v. OMB*,
  598 F.3d 865 (D.C. Cir. 2010) ........................................................................ 8

*Shapiro v. DOJ*,
  969 F. Supp. 2d 18 (D.D.C. 2013) .............................................................. 6, 8, 12
*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ................................................................................... 4
*Warrington v. Patel*,
  2024 WL 775437 (M.D. Fla. Feb. 26) ............................................................ 12

**Statutes**

5 U.S.C. §552 ............................................................................... 3, 9, 10, 11

**INTRODUCTION**

This Court should not follow the Report and Recommendation, which advises the Court to maintain the veil of secrecy over one of the largest impositions of penalties in SEC history. In doing so, the R&R improperly excuses the SEC's forfeiture, accepts its boilerplate predictions of foreseeable harm, and makes no attempt to segregate and produce non-exempt information. This case epitomizes the need for the Freedom of Information Act—to expose our government's conduct to the light of public scrutiny.

Between 2021 and 2024, the SEC launched a sweeping, suspicion-less investigation into dozens of companies. Facing the full weight of the SEC, these companies paid record-setting penalties—nearly two billion dollars in total. While some got off relatively unscathed, others weren't so lucky. Acknowledging the "'wide range in penalties,'" the SEC promised that it wasn't just "'picking numbers at random'" and assured the public that penalties were based on certain factors, which it publicly identified. ASA Br. 5-6. But when ASA tried to scrutinize these claims—as FOIA allows—the SEC fought disclosure at every turn. In the administrative proceeding, the SEC invoked only one exemption—Exemption 7(A)—because it allowed the SEC to withhold every document without conducting a search. The SEC's rationale was so flimsy that it abandoned Exemption 7(A) after ASA sued and offered a new rationale here, Exemption 5.

The R&R erroneously accepted this new rationale. To start, the SEC forfeited its ability to assert a new exemption. In its briefing, ASA explained why FOIA's text, structure, and purpose make clear that an agency—just like an individual requester—

1

can forfeit arguments not made during the agency proceedings. Yet the R&R surprisingly never addressed these textualist arguments, choosing instead to follow outdated, nonbinding precedent that gives agencies leeway never granted by Congress. Because the SEC made no excuse for its forfeiture of Exemption 5, the R&R couldn't find one either. The SEC, like all individuals who sue an agency, shouldn't get a free do-over in court.

The R&R further erred by concluding that Exemption 5 shields the spreadsheets at issue. As the R&R acknowledged, the spreadsheets were not prepared for actual or anticipated litigation; they were used to determine and impose *penalties* for settlements. These factors and data are not protected work product. Nor are they protected by the deliberative process privilege. By the SEC's own admission, they reflect a uniform policy for how the SEC sets penalties. And if the factors aren't protected, the raw data isn't either. Nor is information about *prior* penalties "predecisional."

On foreseeable harm, the R&R made its most obvious error. It found that ASA could not overcome the "presumption" that disclosure would harm the agency. R&R 16. But no such presumption exists. It is the SEC's burden—not ASA's—to explain why disclosure of the spreadsheets would inflict specific harm. Courts regularly reject the same boilerplate assertions of harm that the SEC provided. These justifications are especially weak here, where the SEC claims to *want* transparency and, indeed, has already publicly disclosed some of the same information sought by ASA.

Finally, the R&R's segregability finding doesn't hold up. Because Exemption 5 applies to information, not documents, the R&R needed to look spreadsheet by

2

spreadsheet and piece by piece. The spreadsheets undoubtedly contain *some* information that is not protected—*e.g.*, factors the SEC already publicly divulged and backward-looking descriptions of past penalties. The R&R couldn't adequately explain why those data—contained in rows and columns on spreadsheets—couldn't be separately produced.

The Court should reject the R&R and order the SEC to produce the spreadsheets.

## ARGUMENT

**I.     The R&R ignored ASA's textual arguments and misapplied the law of forfeiture.**

This case requires statutory interpretation: whether FOIA permits an agency to raise new arguments in a district court to justify its decision to withhold documents during the agency proceedings. In its briefing, ASA explained why the text, structure, and purpose of FOIA prevent the agency from doing this bait-and-switch. ASA Br. 8-12; ASA Reply 1-3. Yet the R&R responds to none of these arguments. R&R 5-8. As ASA explained, the text of FOIA is backward-looking. It instructs the Court to "review" the agency's "determination" in the administrative proceeding that an exemption applies. 5 U.S.C. §552(a)(6)(A)(ii). FOIA's text thus reflects the "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015). FOIA's structure and purpose confirm this reading. ASA Br. 9-12; ASA Reply 1-3. FOIA creates a rigorous administrative process for agencies and requesters to raise and dispute exemptions—an intricate and detailed scheme that

3

makes little sense if agencies can treat it as a practice run and assert new exemptions later. *See* ASA Br. 9-10; ASA Reply 2. Indeed, courts rigorously enforce forfeiture rules against individuals seeking records from the government. ASA Reply 2; *see, e.g.*, *Jurewicz v. USDA*, 891 F. Supp. 2d 147, 161 (D.D.C. 2012) (describing forfeiture as a "'hard and fast rule of administrative law'"). Congress never would have made these rules one-sided. If an agency has *carte blanche* power to assert new exemptions in court, it will have no incentive to take the agency proceedings seriously, which is exactly what happened here. ASA Br. 10-12; ASA Reply 2-3.

Rather than address these arguments, the R&R simply points to a "line of cases" that allowed agencies to raise new exemptions in court. R&R 6. But as explained, ASA Br. 12-14; ASA Reply 3, none of these cases grapple with the text, structure, and purpose of FOIA, and most merely parrot a flawed 1981 opinion from the Northern District of Georgia, *Dubin v. Dep't of the Treasury*, 555 F Supp. 408 (N.D. Ga. 1981). The R&R repeats the reasoning of *Dubin*, but it isn't even clear if the R&R agreed with it. *See* R&R 7. *Dubin* is wrong in any event. ASA Br. 12-14. This Court must interpret the text for itself; it cannot simply accept nonbinding, outdated precedent as the last word on the issue.

The R&R's criticisms of ASA's case citations miss the mark. ASA cited *Smith v. Spizzirri* merely to show that courts interpret a statute by examining its "text, structure, and purpose." 601 U.S. 472, 475 (2024). And ASA doesn't dispute that other cases it cited involve agencies asserting new exemptions at the appellate level. *See* R&R 7-8. These cases support ASA's argument that "permitting the government to

4

raise its FOIA exemption claims one at a time"—which is what happened here—conflicts with FOIA's purpose of mandating the "efficient, prompt, and full disclosure of information." *Farahi v. FBI*, 2017 WL 11662716, at *2 (D.D.C. Jan. 23) (cleaned up); *see* ASA Reply 2-3. The R&R again takes no issue with this argument.

The R&R appeared to conclude that the SEC's conduct was appropriate because the agency did not take a new position "formulated to surprise an opponent mid-litigation." R&R 8. But that conclusion flatly contradicts the record. Despite its statutory obligation, the SEC never gathered and reviewed the documents in response to ASA's requests, and it disingenuously asserted Exemption 7(A) so it could withhold everything in one swoop. ASA Br. 1-2, 6-7, 11. The SEC took these actions despite ASA's intra-agency appeal pointing out the flaws in its reasoning. ASA Br. 6-7. Only when ASA was forced to sue did the agency flip its position in the middle of this litigation. ASA Br. 7-8. None of this conduct was justified.

To the extent the R&R suggests that the SEC should be excused from its forfeiture, the agency has *never argued* that it satisfies any equitable exception to forfeiture. *See* ASA Reply 3. Nor could it. *Id.* The SEC ignored its statutory obligations to gather and review the documents; gave ASA specious reasons for denying its requests *in toto*; and has provided no valid justification for its forfeiture. FOIA requires the Court to hold the SEC to the decisions it made during the agency proceedings.

5

## II. The R&R misapplied the work product doctrine and deliberative process privilege.

Even if the SEC were permitted to assert Exemption 5 at this late hour, its rationale for doing so fails, and the R&R was wrong to conclude otherwise.

### A. The SEC spreadsheets are not exempt under the work product doctrine.

The R&R doesn't dispute that the spreadsheets are work product only if they were prepared "'in anticipation of litigation or for trial.'" *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 30 (D.D.C. 2013). And the R&R agrees that the spreadsheets were "drafted to assist the SEC in determining the appropriate fine to impose under certain circumstances." R&R 15; *see also* R&R 11 (the SEC "created the spreadsheets with an eye toward settlement"); SEC Opp. 8 (the spreadsheets were made "for purposes of settling Enforcement cases"). Those concessions should end the matter. *See* ASA Br. 15; ASA Reply 4.

The R&R found that the work product doctrine should apply because "litigation was [not] off the table." R&R 11. But the fact that litigation was theoretically possible is irrelevant. The work product doctrine is "highly fact specific," *In re Grand Jury Subpoena*, 282 F.3d 156, 161 (2d Cir. 2002), and litigation must be "'fairly foreseeable' at the time the [documents] were created," *Frank LLP v. CFPB*, 288 F. Supp. 3d 46, 55 (D.D.C. 2017); *Shapiro*, 969 F. Supp. 2d at 34 (litigation must be "anticipated"). The facts *here* show that the SEC was simply imposing punishments on regulated entities. More than 100 entities settled with the SEC and not one ever went to litigation or trial. ASA Reply 4. As two SEC Commissioners openly acknowledged, the SEC's

6

investigations were designed to produce quick, high-dollar penalties to boost SEC revenue. ASA Br. 1, 3. The spreadsheets were made for that purpose, not for future litigation.

The R&R found that even though the spreadsheets contain "compilations of raw data," that data is work product because it "reflect[s] factors" that SEC attorneys "weighed" to determine penalties and thus "could provide insight into the thought processes of agency attorneys." R&R 12. But it is black letter law that "compilations of raw data" are not work product and must be segregated and disclosed. ASA Br. 16; ASA Reply 4-5. And the SEC could easily produce the "raw data" and "factors" contained in the spreadsheets without revealing any attorney commentary. The spreadsheets primarily contain segregable "columns or rows with information about the [investigated] entities," Tallarico Decl., Ex. 1, which are nothing like "interview notes" where attorney "thought processes" are "'suffused throughout.'" R&R 12.

The R&R's concerns about revealing internal attorney thinking carry little weight here because the SEC has already publicly disclosed the factors it used to calculate penalties. *See* ASA Br. 17-18; ASA Reply 5. The SEC thus has waived any privilege over this information. *Id.* The R&R's only response is that the public remarks were not "firm-specific" and producing the spreadsheets would reveal "how the Enforcement attorneys' thought processes evolved as the two-and-a-half-year investigation into off-channel communications cases developed." R&R 13. But the SEC has acknowledged that the *same* factors were applied to *all* entities. ASA Br. 5-6; ASA Br. Ex. D at 3-4 (the SEC considers certain factors "when assessing what penalty to

7

recommend in each action"). Revealing these factors thus should be nothing new, and the individualized data corresponding with these factors are just raw numbers or bare facts. The spreadsheets can be segregated to produce only information that was waived or which reveals no new attorney thought processes. ASA Br. 23-24; ASA Reply 5, 7 n.5; *see, e.g.*, *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 489 (9th Cir. 2018) (finding that "substantial portions [of documents] ... are not attorney work product" and "if segregable, must be disclosed"); *Shapiro*, 969 F. Supp. 2d at 35 n.5 (information must be disclosed if the work product doctrine has been waived).

### B. The SEC spreadsheets are not exempt under the deliberative process privilege.

The R&R also erred in holding that the spreadsheets are "predecisional" and "deliberative" and thus protected by the deliberative process privilege. The R&R painted with broad strokes, concluding that all the spreadsheets when "pieced together" are "'recommendatory in nature'" and "reveal the internal back-and-forth between Enforcement attorneys regarding penalty tiering." R&R 15. But FOIA protects "'information, not documents.'" *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016). As explained, the *information* in these spreadsheets is not protected by this privilege. The "factors" that are used "reflec[t] [the SEC's] formal or informal policy" for determining penalties and thus are not "deliberative." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010); ASA Reply 5; ASA Br. 18-19. Moreover, even if the factors were a protectable secret sauce, the SEC *already disclosed* them to the public. ASA Br. 5-6, 17, 20. And if the factors can't be

withheld, then the raw data corresponding to them can't be either. ASA Reply 5-6. The R&R's only response is that the information is "'inextricably intertwined' with deliberative material." R&R 15. But whatever this "deliberative material" is (the R&R doesn't say), it can easily be excised from a spreadsheet with rows and columns, *see* ASA Br. 24; ASA Reply 7 n.5.

The R&R appears to concede that there are spreadsheets that describe *past conduct*. R&R 14. Those spreadsheets must be produced. ASA Reply 6. A summary and description of the SEC's prior conduct by definition is not "predecisional," even if the facts and figures were "helpful for [the SEC] as a point of comparison." *100Reporters LLC v. DOJ*, 316 F. Supp. 3d 124, 157 (D.D.C. 2018). Finally, the SEC waived its right to withhold the information that was already publicly revealed, ASA Br. 20; ASA Reply 6, an argument the R&R never addresses.

### III. The R&R failed to properly apply the foreseeable harm standard.

FOIA prohibits an agency from withholding information unless it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. §552(a)(8)(A)(i)(I). An agency thus may be required to disclose a record "'even if it falls within a FOIA exemption.'" *Jud. Watch, Inc. v. DOJ*, 2019 WL 4644029, at *3 (D.D.C. Sept. 24). As the R&R correctly recognized, R&R 16, this foreseeable harm requirement is a "'heightened standard'" that imposes an "'independent and meaningful burden'" on agencies. *Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019).

9

But rather than hold the SEC to this heightened standard, the R&R flipped the burden, concluding that the burden was on *ASA* to "rebu[t] the presumption" that the documents could be withheld. R&R 16. That is not the law. The statute places the burden on the agency—not the requester—to show foreseeable harm. *See* 5 U.S.C. §552(a)(8)(A)(i)(I) (the agency can withhold information "only if … *the agency* reasonably foresees" harm from disclosure (emphasis added)). Indeed, Congress adopted this provision to stop agencies from "invoking FOIA exemptions 'even though no harm would result from disclosure.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 104; *see* ASA Br. 21.

To be sure, "'[a]n agency's *declarations* are entitled to a presumption of *good faith*.'" R&R 5 (quoting *Jimenez v. DHS*, 119 F.4th 892, 900 (11th Cir. 2024)) (emphasis added); *see, e.g.*, *Jimenez*, 119 F.4th at 905 (government's declaration that it searched for all responsive documents was "entitled to a presumption of good faith"); *EFF v. DOJ*, 517 F. Supp. 2d 111, 120 (D.D.C. 2007) (applying presumption and finding "no grounds upon which to reject the factual assertions set forth in [the agency's] Declaration"). But this presumption is inapposite here. The question is whether the SEC has carried its burden of showing foreseeable harm, and it is well-established that "generic" and "boilerplate" assertions that the agency will be harmed are insufficient. ASA Br. 22; ASA Reply 7; *see, e.g.*, *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106-07. These generic rationales are all that the SEC ever produced. ASA Br. 22-23; ASA Reply 7. Indeed, that is why the R&R could only reach a similar, vague conclusion that

10

disclosure "would harm the interests Exemption 5 is designed to protect." R&R 16. Courts have repeatedly refused to accept these same assertions as sufficient. ASA Br. 22-23; *see also Project for Priv. & Surveillance Accountability, Inc. v. Off. of the Dir. of Nat'l Intel.*, 2025 WL 2506561, at *7 (D.D.C. Sept. 2) (agency declaration that the information would "'chil[l] candid conversations about appropriate agency actions'" was "neither 'focused' nor 'concrete' enough to satisfy th[e] [foreseeable-harm] standard").

The SEC had to rely on boilerplate assertions of harm because it won't actually be harmed by disclosure of these spreadsheets, whether produced in full or partially redacted. The SEC already publicly disclosed the factors it used, and it has never claimed that disclosing the data themselves would harm the agency. The investigations have all concluded and resulted in publicly available fines. And the SEC admits it wants transparency so that the public knows how penalties were calculated and imposed. ASA Reply 7. Far from harming the agency, producing these spreadsheets will accomplish exactly what FOIA intended. It will open agency action to the light of public scrutiny, allowing the public to learn how the SEC went about its business when it imposed some of the largest penalties in the history of the agency. Our government will not be harmed by this exposure.

**IV. The R&R failed to properly segregate and produce non-exempt material.**

Even if the SEC's forfeiture is excused and the spreadsheets contain exempt material, the inquiry isn't over. FOIA protects only "information"—not "documents"—and mandates that non-exempt information be segregated and produced. ASA Br. 23-24; *see* 5 U.S.C. §552(b) ("Any reasonably segregable portion of a record

11

shall be provided to any person requesting such record after deletion of the portions which are exempt."). But the R&R brushed this obligation aside, broadly concluding that the SEC had no duty to "release any segregable information" because "the work product doctrine shields the documents in their entirety, and factual elements can 'seldom be segregated from attorney work product.'" R&R 17. Even if the spreadsheets contain some information protected as work product, that doesn't absolve the Court from looking at whether *other* information must be disclosed. *ACLU of N. Cal.*, 880 F.3d at 489 (finding that "substantial portions [of documents] … are not attorney work product" and "if segregable, must be disclosed"). As explained, it is highly unlikely that the raw data—which correspond with factors that are already publicly known—would reveal the mental processes of SEC attorneys. Moreover, any information that was waived (like the factors) also must be segregated and produced. *Shapiro*, 969 F. Supp. 2d at 35 n.5; *Warrington v. Patel*, 2024 WL 775437, at *2 (M.D. Fla. Feb. 26) ("[W]hen work product is willingly revealed to an adversary, as here, the privilege is waived 'as to that information.'"). And any portions of information within the spreadsheets that will not cause foreseeable harm to the agency also must be produced. *See ACLU of Mass., Inc. v. ICE*, 686 F. Supp. 3d 11, 21-24 (D. Mass. 2023) (separately analyzing whether the agency showed foreseeable harm with respect to each redacted portion of the documents at issue). Parsing through these spreadsheets is essential. Even a partial reveal of their information could go a long way in informing the public about the SEC's actions.

## CONCLUSION

The Court should reject the Report and Recommendation, deny the SEC's motion for summary judgment, and grant ASA's motion for summary judgment.

Dated: January 5, 2026

Respectfully submitted,

/s/ J. Michael Connolly
J. Michael Connolly (*pro hac vice*)
  *Lead Counsel*
Steven C. Begakis (*pro hac vice*)
Conor D. Woodfin (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiff
American Securities Association*

## CERTIFICATE OF SERVICE

I certify that on January 5, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system, serving all counsel of record.

/s/ J. Michael Connolly
J. Michael Connolly

13