UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN SECURITIES
ASSOCIATION,

    Plaintiff,

v().                                                   CASE NO. 8:24-cv-1377-SDM-SPF

U.S. SECURITIES AND
EXCHANGE COMMISSION,

    Defendant.
_____/

## **ORDER**

        The American Securities Association (ASA) sues (Doc. 1) the Securities and Exchange Commission (SEC) under the Freedom of Information Act (FOIA). The SEC moves (Doc. 31) for summary judgment, and the ASA responds (Doc. 32). The ASA moves (Doc. 32) for summary judgment, the SEC responds (Doc. 34), and the ASA replies (Doc. 42). In a thorough and well-reasoned report (Doc. 47), Magistrate Judge Sean P. Flynn concludes (1) that the SEC did not waive Exemption 5 by failing to assert the exemption during the administrative process and (2) that the spreadsheets are protected under the administrative-process privilege and the attorney-work-product privilege. The ASA objects (Doc. 50) to the report, and the SEC responds (Doc. 51) in opposition.

The ASA requests documents and material used by the SEC to determine penalties. Claiming protection under FOIA exemption 5,[1] the SEC withholds fifty-two spreadsheets comprising certain entities and for each entity certain publicly available financial, industry, and personnel data. At the time of each spreadsheet's generation, each entity was either the subject of an unresolved SEC investigation or the subject of an SEC order in a case already settled. Each spreadsheet organizes each entity and the associated financial, industry, and personnel data into penalty tiers representing either a prospective but unimposed penalty or a final, imposed penalty. The deliberative-process privilege and the attorney-work-product privilege prevent unwarranted view into an executive agency's thought process and decision-making. On the other hand, FOIA prevents an executive agency from wielding an unwarranted ability to obscure. This order determines that disclosure of each spreadsheet's contents depends on whether the displayed data details a final, imposed penalty or a prospective but unimposed penalty. To the extent that each spreadsheet contains data of an entity undergoing investigation by the SEC at the time the spreadsheet was generated and organizes that entity into tiers of potential penalties, the contents reveal SEC

---

[1] This order adopts the magistrate judge's determination that applicable precedent excuses the SEC's waiver of the FOIA argument that has prevailed in the district court, an argument advanced in the district court but not advanced in the earlier administrative proceeding. Accepting the SEC's pivot on the theory of the case appears to countenance duplicity, gamesmanship, neglect, insouciance, or worse from an agency of the United States and denies a party forced to undergo the agency's administrative process the benefit of orderly, disciplined, accountable, and forthcoming participation by the United States. This singular leniency is, to say the least, inexplicable, unseemly, and unfair. The evasion deployed in the circumstance is, or should be, an acute embarrassment to the United States, both to the agency and to the judiciary. As Judge Ed Carnes wrote after the government's brazen pivot in *U. S. v. Brown*, 342 F.3d 1245, 1247 (11th Cir. 2003), "Any other litigant might be embarrassed, but in litigation the government never blushes." The Eleventh Circuit should subject the applicable precedent to a keen, stern, skeptical, and searching examination.

lawyers' mental impressions and are protected opinion work-product. But to the extent that each spreadsheet contains data of an entity with whom the SEC already settled and organizes that entity into a final, imposed penalty tier, the contents are discoverable fact work-product. The SEC must produce by use of redaction or other reasonable means the portion of each spreadsheet that contains final, imposed penalties and the attendant data considered. A more detailed explanation follows.

## DISCUSSION

After an industry-wide crackdown on broker-dealers for failure to retain off-channel communications, the ASA submitted to the SEC several requests under FOIA including a 2024 FOIA request for "all records (including, but not limited to, tables, calculations, schedules, matrices, standards, data, and guidelines) that were considered in connection with calculating, determining, proposing, or agreeing to any penalties, fines, or other sanctions associated with the SEC's recent recordkeeping sweep initiative." The parties agreed to narrow the scope of the request to "[a]ny guidelines, matrixes, tables, and the like that the SEC used in determining the monetary fines in the investigations at issue." Claiming protection under the deliberative-process privilege and the work-product privilege, the SEC withholds fifty-two responsive documents.

The work-product doctrine protects from discovery "material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) (quoting Rule 26(b)(3)(A)). Material is "prepared in

- 3 -

anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).

"Opinion work product" — material that contains "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" — enjoys "a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). "Fact work-product," which may encompass, for example, the result of a factual investigation — but which does not reveal the mental impressions, conclusions, opinions, or legal theories of a party or a party's counsel — is available upon a requisite showing of substantial need and undue hardship. *See Drummond,* 885 F.3d at 1335; *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *see also Director, Office of Thrift Supervision v. Vinson & Elkins, LLP,* 124 F.3d 1304, 1307 (D.C. Cir. 1997).

According to the SEC, enforcement lawyers generated the fifty-two spreadsheets during investigations into whether broker-dealers failed in violation of federal securities law to retain "off-channel communications." (Doc. 31-2 at ¶¶ 4–5). Investigation by a federal agency provides sufficient grounds to determine that documents were generated in anticipation of litigation. *See In re LTV Sec. Litig.,* 89 F.R.D. 595, 612 (N.D. Tex. 1981) ("Investigation by a federal agency presents more than a

- 4 -

"remote prospect" of future litigation and gives grounds for anticipating litigation sufficient for the work-product rule to apply."); *see also SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to quality as attorney work product."). Therefore, the discoverability of the spreadsheets depends on their categorization as either fact work-product or opinion work-product.

Generated for reference by SEC enforcement attorneys in determining penalties, the spreadsheets contain columns and rows of publicly available financial, industry, and personnel data of (1) entities undergoing investigation by the SEC and (2) entities that settled with the SEC. Both the selection for consideration of publicly available data and the organization of each entity and attendant data into a penalty tier arguably renders the spreadsheets opinion work-product.

*Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), held that the selection and compilation of documents by counsel in preparation for pretrial discovery constitutes opinion work-product because "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." "[T]he selected documents represented, as a group, counsel's legal opinion as to the evidence relevant both to the allegations in the case and possible legal defenses." *Sporck,* 759 F.2d at 313. Dissenting, Judge Collins J. Seitz criticized the far-reaching implications of the majority decision:

- 5 -

> Every act by a litigant or his attorney gives rise to similar vague inferences. For example, a typical interrogatory from a leading treatise would permit questions of the following form: 'Identify each writing ... which relates or refers directly or indirectly to [a transaction in question].' ... It cannot seriously be contended that an answer is not required because it would reveal the fact that the attorney thought that certain documents were relevant to the transaction.

759 F.2d at 319.

The Eleventh Circuit has not adopted *Sporck*. *See Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006) ("Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product"); *Jackson v. Geometrica, Inc.,* No. 304-CV-640-J20-HTS, 2006 WL 510059 (M.D. Fla. Mar. 2, 2006) ("Not everything which may give [an] inkling of a lawyer's mental impressions, conclusions, opinions or legal theories is protected as the lawyer's work-product. Almost every adversarial position adopted can, through deduction, give some indication of thought processes or strategy[.]") (quoting *Mead Corp. v. Riverwood Natural Res. Corp.,* 145 F.R.D. 512, 520 (D.Minn.1992).  Nor has *Sporck* been widely adopted by other circuits.[2]  District courts in the Eleventh Circuit have crafted a narrower application by requiring "the party raising 'selection-based opinion work-product' objection to 'come forward with some evidence that disclosure of the requested documents creates a real, non-speculative danger of revealing counsel's thoughts.' *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 204173

---

[2] As of the date of this order neither the United States Supreme Court, nor the United States Court of Appeals for the Federal Circuit, nor the federal appellate courts in the First, Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh circuits have adopted or endorsed the majority's reasoning in *Sporck. See Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195, n. 2 (2008); *But see Kalbers v. DOJ - United States Dep't of Just.*, No. 24-1048, 2026 WL 250189 (9th Cir. Jan. 30, 2026).

(S.D. Fla. Jan. 24, 2012) (collecting cases). The SEC has produced no evidence that disclosure of data previously considered in determining final, imposed penalties creates a non-speculative danger of revealing SEC enforcement lawyers' thoughts. Further, unlike *Sporck,* in which the request concerned the identity of a subset of documents produced in discovery, the SEC withholds all responsive documents. The selection for inclusion in the spreadsheets of certain publicly available industry, financial, and personnel data that the SEC enforcement lawyers considered does not render the spreadsheets opinion work-product.

    The charts arrange the entities and attendant data into potential (and, as versions progressed, final) penalty tiers. Each spreadsheet is an iteration of a document updated and transmitted internally by SEC enforcement lawyers as investigations progressed. To the extent that the spreadsheets' organization and re-organization suggest penalties (which fluctuate in iterations revelatory of the evolving thoughts of SEC enforcement lawyers) the spreadsheets necessarily convey attorney mental impressions and therefore constitute opinion work-product. But during the period the spreadsheets were generated the SEC settled with certain entities and periodically announced final penalties. As a result, the organization in the spreadsheets of certain entities in certain penalty tiers became fact and no longer fluctuated in future iterations. To the extent that a spreadsheet contains a final, imposed penalty the spreadsheet constitutes fact work-product.

    Nothing in the record suggests that the ASA can acquire the same information — "any guidelines, matrixes, tables, and the like that the SEC used in determining

the monetary fines in the investigations at issues" — by any other means. The SEC must produce the portion of the spreadsheets that constitutes fact work-product: the final penalty amounts, the entities penalized, and the attendant data considered.

Application of the deliberative process privilege yields the same result. The deliberative process privilege protects documents that are both "pre-decisional" and "deliberative." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004). A document is "pre-decisional" if prepared "to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Moye,* 376 F.3d at 1277. A document is "deliberative" if disclosure "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." *Moye,* 376 F.3d at 1278. While the portion of the spreadsheets proposing penalty tiers is pre-decisional and deliberative, the portion detailing final, imposed penalties is not. *See Pub. Emps. for Env't Resp. v. Env't Prot. Agency*, 288 F. Supp. 3d 15 (D.D.C. 2017) (holding that documents "that merely state or explain agency decisions" are not pre-decisional). An agency cannot withhold an entire document because the document contains some exempt material: "FOIA requires the agency to release '[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt.'" *Pub. Emps. for Env't Resp.,* 255 F. Supp. 3d at *27 (quoting 5

U.S.C. § 552(b)).  Here, the portion of the spreadsheets detailing final, imposed penalties is reasonably segregable by redaction.

## CONCLUSION

The report and recommendation (Doc. 47) is **ADOPTED-IN-PART**.  The ASA's objections (Doc. 50) are **SUSTAINED-IN-PART** and **DENIED-IN-PART**.  The SEC's motion (Doc. 31) for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The ASA's cross-motion (Doc. 32) for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The SEC must produce by use of redaction or other reasonable means each spreadsheet to the extent that each spreadsheet identifies, as of the date of the spreadsheet's generation, an entity and attendant entity-data organized into a final, imposed penalty tier.  The SEC may redact each spreadsheet (1) to the extent that each speadsheet identifies, as of the date of generation, an entity and attendant entity-data organized to display a prospective but unimposed penalty, and (2) to the extent that each spreadsheet contains an evaluative comment by an SEC enforcement lawyer.  The clerk is **DIRECTED** to enter judgment for the ASA in part and for the SEC in part, each in accord with this order, and to close the case.  Jurisdiction is reserved to enforce this judgment.

ORDERED in Tampa, Florida, on March 5, 2026.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE